GEORGE S. MAY *v.* EMERSON K. YOUNG.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

(1)

2

Argued October 5—decided November 1, 1938.

*Charles R. Covert,* with whom was *Edward J. Quinlan, Jr.,* for the appellant (plaintiff).

*Maurice T. Healey, Jr.,* with whom, on the brief, was *William J. Larkin, Jr.,* for the appellee (defendant).

HINMAN, J. The plaintiff is an industrial engineering firm engaged in the business of installing systems covering sales and administrative expenses, budgets, accounting and cost methods, overhead rates, factory clerical, direct and indirect labor, production planning and scheduling, inventories and other cost elements. It was organized in 1925 and has since served seventeen hundred business firms in forty-four states and in Canada. Its systems are installed by a specially qualified and trained personnel, and a particular job may last one month or many depending on the extent of the work undertaken. It has developed solutions of particular industrial problems which are preserved in its confidential records, as are schedules of its rates and charges, a list of the clients served and a list of prospective clients being contacted. The defendant entered into the employ of the plaintiff on August 1, 1929, and continued therein until July 1, 1936, and served the plaintiff in cities east of the Mississippi river. Confidential data, records and information possessed by the plaintiff were made available to the defendant and used by him in the course of his employment.

On July 1, 1935, the plaintiff and the defendant entered into a written contract setting forth that the plaintiff used in its business certain data and information and certain trade secrets which would be communicated to the defendant by virtue of his employment and which the plaintiff desired to protect and preserve for its own use, and by which the defendant agreed to serve the plaintiff and it agreed to employ him indefinitely so long as his services were satisfactory but reserved the right to terminate the agreement at any time upon seven days notice in writing. The contract included an agreement by the defendant that he would not "while this contract remains in effect or at any time within two years thereafter, . . . (2) enter

into the employ of any client of the [plaintiff]," and that in case of violation of this or other related provisions the plaintiff shall be entitled to an injunction and "as liquidated damages" the sum of $10,000. The defendant thereafter worked under that contract until about July 1, 1936, when his employment was terminated by the plaintiff in accordance with the provisions of the contract.

In 1932 the defendant, as an employee of the plaintiff, had performed services, including production scheduling, for the Waterbury Buckle Company and in April, 1936, had solicited that company for further work to be done later in 1936 by the plaintiff. Inefficiencies existed in the production of the Waterbury Buckle Company and it was desirous of securing assistance in correcting them, and on December 22, 1936, the defendant entered into its employ as a production manager, his duties involving the speeding up and increasing of production, services similar to which were included in those performed by the plaintiff in its business. The Waterbury Buckle Company had formed no intention of employing the plaintiff at any time subsequent to 1932, but the finding that in December, 1936, it was a client of the plaintiff within the purview of the contract between the plaintiff and the defendant is not questioned.

From the facts found, including those above stated with corrections to which the plaintiff is entitled, the trial court concluded, correctly, that the only provision of the contract which the defendant violated was that forbidding him to enter into the employ of any client of the plaintiff within two years after the termination of his employment by the plaintiff. The principal question on this appeal concerns the validity of the further conclusion that this provision "is contrary to

public policy, void, and if enforced against the defendant would impose undue hardship upon him."

A covenant restricting the activities of an employee during or after the termination of his present employment, in order to be valid and enforceable must be partial, or restricted in its operation either as to time or place, on some good consideration, and "must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public." *Cook* v. *Johnson,* 47 Conn. 175, 176. Of the principal considerations affecting the validity of restrictive contracts on grounds of public policy, one is injury to the public by being deprived of the restricted party's industry or services, the other the injury to the party himself by being precluded from pursuing his occupation and thus being prevented from supporting himself and family. "But if neither of these evils ensue, and if the contract is founded on a valid consideration and a reasonable ground of benefit to the other party, it is free from objection, and may be enforced." *Oregon Steam Navigation Co.* v. *Winsor,* 87 U. S. 64, 68. The restriction here involved being only from engaging with clients of the plaintiff, leaving open to the defendant all other opportunities for employment, cannot be held so to involve either of these consequences as to invalidate it on grounds of public policy.

If such a restriction is to be upheld and enforced it must be reasonably necessary for the fair protection of the employer's business, good will or rights and not unreasonably restrict the rights of the employee, due regard being had to the interests of the public, and the circumstances and conditions under which the contract is to be performed. *Roessler* v. *Burwell,* 119 Conn. 289, 294, 176 Atl. 126; *Samuel Stores, Inc.* v.

*Abrams,* 94 Conn. 248, 253, 108 Atl. 541, 9 A. L. R. 1450; *Styles* v. *Lyon,* 87 Conn. 23, 29, 86 Atl. 564; *Dyar Sales & Machinery Co.* v. *Bleiler,* 106 Vt. 425, 434, 175 Atl. 27; *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 474, 135 N. E. 568; 9 A. L. R. 1468; 52 A. L. R. 1364; 67 A. L. R. 1004; 98 A. L. R. 966. A bargain by an employee not to compete with his employer during the term of the employment or thereafter "within such territory and during such time as may be reasonably necessary for the protection of the employer . . . , without imposing undue hardship on the employee" does not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly. Restatement, Contracts, Vol. 2, § 516 (f).

Agreements by which an employee undertakes not to enter a competing business or employment on leaving his employer's service are reasonably necessary for the protection of the employer's business. Under such agreements parties obtain employment on certain terms which prevent them, on leaving that employment, from making use of knowledge which they have acquired during that employment to the detriment of their employer. *Middleton* v. *Brown,* 47 L. J. Ch. 411, 412; 13 C. J. 485. When the character of the business and the nature of the employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights, and do not unreasonably restrict the rights of the employee, due regard being had to the subject-matter of the contract and the circumstances and conditions under which it is to be performed. Especially if the employment involves the imparting of trade secrets, methods or systems and contacts and

associations with clients or customers it is appropriate to restrain the use, when the service is ended, of the knowledge and acquaintance, so acquired, to injure or appropriate the business which the party was employed to maintain and enlarge. 6 R. C. L., pp. 805, 806. The employer is entitled to contract for and to enforce protection against unfair competition made dangerous by the use of weapons placed by him in his employee's hands during his service and which may be turned against him, such as the knowledge of trade secrets or other confidential information or an acquaintance with his employer's customers and their requirements, resulting from the nature of the employee's services, which is regarded as a species of good will in which the employer has a proprietary interest. *Thomas W. Briggs Co.* v. *Mason,* 217 Ky. 269, 274, 89 S. W. 295, 52 A. L. R. 1344, 1347.

It is apparent from the finding that the business of the plaintiff is of a somewhat unusual nature involving the development and use of systems and methods and the accumulation of records and data which may well be regarded as partaking of the nature of trade secrets, and constituting an enterprise which could not be confined within narrow territorial limits as in the most commonly occurring cases involving dealings with commercial customers in one community or section. *Thomas W. Briggs Co.* v. *Mason,* supra, 276. Employments which involve acquisition of confidential knowledge involved in the business and acquaintance with the employer's clientele are regarded as particularly appropriate to restrictions against the use of such knowledge in competition with the employer. *Harrison* v. *Glucose Sugar Refining Co.,* 116 Fed. 304, 311; *Scott* v. *Gillis,* 197 N. C. 223, 227, 148 S. E. 315; *Elbe File & Binder Co.* v. *Fine,* 242 N. Y. S. 632; *Wark* v. *Ervin Press Corp.,* 48 Fed. (2d) 152; *Davey Tree Expert Co.*

v. *Back,* 244 N. Y. S. 239; *Eagle Pencil Co.* v. *Jannsen,*
238 N. Y. S. 49. As to scope, the restraint may rea-
sonably cover actual clients or customers of an em-
ployer whose business with them would be subject to
injury through the activities contracted against. *Sam-
uel Stores, Inc.* v. *Abrams,* supra, 255; *Knapp* v. *S.
Jarvis Adams Co.,* 135 Fed. 1008, 1012.

We are unable to agree that the contract in the
respect here concerned so seeks to afford the plaintiff
a kind or degree of protection not warranted by the
circumstances or disproportionate to the potentialities
of the defendant to do it harm (*Granger* v. *Craven,* 159
Minn. 296, 199 N. W. 10, 52 A. L. R. 1356, 1362) as
to render it invalid on that ground, or that it imposes
undue hardship upon the defendant, and we find error
in so concluding. The plaintiff was therefore entitled
to an injunction against violation of that provision of
the contract, covering the two-year period therein spec-
ified. As the employment of the defendant terminated
July 1, 1936, the restriction has now expired by lapse
of time, but the plaintiff is entitled to judgment finding
the issues for the plaintiff as to its right to an injunc-
tion, and for costs, but finding the other issues for the
defendant.

The contract provided that if the defendant should,
in violation of its terms, enter into the employ of any
client of the plaintiff or of any person or corporation
engaged in the same or a similar general line of busi-
ness as that of the plaintiff, or himself engage in any
such business, the plaintiff should be entitled to an in-
junction restraining such violation and "in addition
thereto [the defendant] shall pay to [the plaintiff]
as liquidated damages to compensate [the plaintiff]
for damages sustained by it, the sum of Ten Thou-
sand Dollars." The designation of this sum as liqui-
dated damages does not necessarily make it such

rather than a penalty. If the provision was inserted for the purpose of deterring the defendant from breaching his contract and of penalizing him for doing so, instead of specifying a sum which the parties in good faith agreed upon as representing the damages which would ensue from a breach, it is to be regarded as imposing a penalty. *Florence Wagon Works* v. *Salmon,* 8 Ga. App. 197, 199, 68 S. E. 866; 4 Page, Contracts, § 2118; 1 Sedgwick, Damages (9th Ed.) § 390, p. 758; 1 Sutherland, Damages (4th Ed.) § 283, p. 853; 17 C. J., p. 933. The provision under consideration is within this category. In such a case recovery will be limited to the actual damage and if no damage is proven no recovery may be had. *Miller* v. *Macfarlane,* 97 Conn. 299, 302, 116 Atl. 335; 4 Page, Op. Cit., § 2118. The finding that the plaintiff proved, and the conclusion that it suffered, no damage as a result of the employment of the defendant by the Waterbury Buckle Company are warranted, and there was no error in refusing to award damages.

Denial of a motion for disclosure dated May 26, 1937, also is assigned, but this motion was later renewed and granted in part. The statute (General Statutes, Cum. Sup. 1935, § 1659c) and the rules thereunder (Practice Book, § 73) provide for disclosure of facts or documents material to the mover's cause of action or defense, and within the knowledge, possession or power of the adverse party and to which he or his agent or representative can testify. Materiality to the cause of action set up in the complaint of interrogatories as to which disclosure ultimately was denied was not apparent from the motion, and it called for facts— as to the number and names of foremen in the Waterbury Buckle Company and their respective departments—which it does not appear were shown to be within the knowledge of the defendant or to which he

could testify, and for charts or plans which, if prepared and given to persons by the defendant might not be in his possession or control but, as the court suggested, would be obtainable by subpoena duces tecum served upon the proper officials of the Waterbury Buckle Company. We cannot say that the denials were not within the sound discretion of the court. *Katz* v. *Richman,* 114 Conn. 165, 171, 158 Atl. 219.

There was error in refusing injunctive relief, only, and the case is remanded to the Superior Court with direction to render judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.