# Robert S. Weiss and Associates, Inc. *v.*
# Michael E. Wiederlight et al.
## (13201)

Peters, C. J., Healey, Callahan, Glass and Hull, Js.

Argued May 31—decision released August 9, 1988

*Jay H. Sandak,* with whom, on the brief, was *Catherine C. Ziehl,* for the appellant-appellee (plaintiff).

*David L. Fineberg,* with whom were *Wesley W. Horton* and, on the brief, *Paul J. Pacifico,* for the appellee-appellant (named defendant).

*Thomas E. Minogue, Jr.,* with whom was *Kimberly A. Grillo,* for the appellee-appellant (defendant Insurance Associates of Connecticut, Inc.).

GLASS, J. The plaintiff, Robert S. Weiss and Associates, Inc., instituted an action against Michael E. Wiederlight for breach of a restrictive covenant of employment and theft of trade secrets. In an amended complaint, the plaintiff added Insurance Associates of Connecticut, Inc. (IAC), as a defendant, alleging interference with a business enterprise and theft of trade secrets with Wiederlight acting as its agent. The trial court ruled in favor of the plaintiff on the issues of breach of the restrictive covenant and interference with a business enterprise and awarded damages, but found that the plaintiff had failed to sustain its burden of proof on the issue of theft of trade secrets. The plaintiff appealed to the Appellate Court and the appeal was transferred to this court pursuant to Practice Book § 4023.

On appeal, the plaintiff claims that the trial court erred: (1) in failing to conclude that the plaintiff's customer lists and related insurance information constituted trade secrets and that Wiederlight had committed a theft of trade secrets; (2) in failing to award damages beyond the 1983–1984 period for Wiederlight's solicitation of the plaintiff's accounts in breach of the covenant; and (3) in failing to award damages for other accounts written in the area restricted by the covenant after the court found that the covenant was valid and that Wiederlight had breached it. The defendants on cross appeal argue that the trial court erred in finding

that the restrictive covenant was reasonable and valid and in finding that IAC tortiously interfered with the plaintiff's contract.

The facts may be summarized as follows. The plaintiff is an independent insurance agency in Stamford, that was doing business throughout Fairfield County and in New York at the time of the events underlying this case. In April, 1975, the plaintiff hired Wiederlight to sell commercial insurance under a four year contract of employment. Wiederlight previously had worked in sales with Liberty Mutual Insurance Company (Liberty) in New York for ten years. His written employment agreement at Liberty contained a restrictive covenant not to compete with Liberty for eighteen months after termination of employment.

Wiederlight's 1975 employment agreement with the plaintiff prohibited him from engaging in the commercial insurance business within Stamford and a fifteen mile radius for two years after his employment terminated. In April, 1979, the plaintiff's principal, Robert S. Weiss, and Wiederlight entered into a new four year employment agreement. Wiederlight expressed dissatisfaction with certain provisions of the 1979 contract, which reduced his status and commission rates and omitted a buy-in option that was set forth in the 1975 agreement. When the 1979 agreement was negotiated, Wiederlight's sole source of income was derived from his employment with Weiss. Wiederlight signed the agreement after he had read it and discussed it with his wife. He understood all the terms and conditions and voluntarily entered into the agreement.

The 1979 employment agreement contained three paragraphs pertinent to this case. Paragraph seven identified the agency's business records, including those produced by Wiederlight, as its exclusive property, and forbade Wiederlight from removing such records on

termination of his employment. Paragraphs nine and ten barred Wiederlight, for two years from the date the agreement terminated, from soliciting accounts held by the plaintiff at the time the employment agreement terminated, and from working within Stamford and within ten miles from the outer borders of Stamford.

In March, 1983, Weiss told Wiederlight that his employment agreement would not be renewed upon expiration. Immediately thereafter, Wiederlight was hired by IAC, then located in Southport, and began to solicit and sell commercial insurance policies to customers he had dealt with while working for Weiss. Before hiring Wiederlight, the principals of IAC had reviewed his employment agreement with Weiss and were aware of the terms of the restrictive covenant.

During his employment at IAC from April, 1983, to March, 1985, Wiederlight sold insurance to a number of accounts that belonged to the plaintiff when Wiederlight's employment there ceased. Wiederlight also sold commercial insurance to other customers within the restricted Stamford area. The commissions generated by Wiederlight during his employment at IAC inured to the financial benefit of his employer. The principals of IAC encouraged and induced Wiederlight to sell insurance to customers of the plaintiff and others in the Stamford area despite their knowledge of the restrictive covenant in Wiederlight's 1979 employment agreement with Weiss.

I

We first consider the defendants' claim on cross appeal that the trial court erred in concluding that the restrictive covenant in Wiederlight's 1979 employment agreement was reasonable and therefore valid.[1] We find no error in the trial court's conclusion.

[1] The plaintiff claims that we should not consider the defendants' attack on the validity of the restrictive covenant since they only seek to relitigate

The defendants' first claim is that the trial court's conclusion was erroneous because it applied the wrong criteria to evaluate the reasonableness of the restrictive covenant. We disagree. *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 368 A.2d 111 (1976), sets forth the criteria relevant to an evaluation of the reasonableness of a covenant not to compete ancillary to an employment agreement.[2] Although the trial court stated that it relied upon *Mattis* v. *Lally,* 138 Conn. 51, 54, 82 A.2d 155 (1951), which involved a covenant ancillary to the sale of a business, this fact does not establish that it erred in finding that the restrictive covenant was reasonable. If the trial court's memorandum does not state a proper basis for its results, its judgment may be sustained if there are proper grounds to support it. *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* 194 Conn. 400, 404–405, 480 A.2d 552 (1984); *Herman* v. *Division of Special Revenue,* 193 Conn. 379, 387, 477 A.2d 119 (1984); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

The defendants next claim that the trial court erred in upholding the covenant because: (1) it contained time and geographic constraints that were unreasonable; (2) it unreasonably restrained Wiederlight from any employment in the commercial insurance business; (3) it

the facts. Our examination of the defendants' argument, however, indicates that it raises questions of law and is not simply a wholesale challenge to the trial court's findings resulting in an attempt to have this court retry issues of fact. Cf. *Halperin* v. *Pine Plaza Corporation,* 180 Conn. 85, 87, 428 A.2d 340 (1980).

[2] The five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are: (1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests. *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 137, 368 A.2d 111 (1976); *New Haven Tobacco Co.* v. *Perrelli,* 11 Conn. App. 636, 638–39, 528 A.2d 865 (1987).

unfairly protected the plaintiff's interests and interfered with the public's interest in open competition; and (4) it never became operative under the terms of the contract.[3] We are unpersuaded.

Paragraph nine of the employment agreement barred Wiederlight from selling, soliciting or otherwise engaging in commercial insurance for himself or any other firm in Stamford or within a ten mile radius, excluding Long Island, New York, and areas north of Stamford, for two years following termination of the agreement. Paragraph ten prohibited him from soliciting or selling commercial insurance to customers of the plaintiff, existing when Wiederlight's employment terminated, for two years following termination.

The trial court's conclusion that this restrictive covenant was reasonable is consistent with other cases where we have held that time and geographic restrictions in a covenant not to compete are valid if they are reasonably limited and fairly protect the interests of both parties. See *Scott* v. *General Iron & Welding Co.*, supra, 138, 140 (upholding five year statewide covenant barring employee from working as manager in

---

[3] Wiederlight also contends that the trial court's decision should not stand because the court concluded that the covenant was reasonable with respect to geographic and time restrictions without addressing whether it reasonably protected Wiederlight's occupational opportunities, whether it was reasonable in relation to the plaintiff's business interests, or whether it unduly interfered with the public's interests. See *Scott* v. *General Iron & Welding Co.*, 171 Conn. 132, 137, 368 A.2d 11 (1976).

The trial court's conclusion that the covenant was enforceable implies a conclusion as to the reasonableness of all aspects of the covenant. Moreover, " '[w]e have frequently indicated that if an appellant requires amplification or clarification of the factual basis of a decision to present his claims of error he should seek a further articulation from the trial court.' " *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 459, 493 A.2d 229 (1985), quoting *Newington* v. *General Sanitation Service Co.*, 196 Conn. 81, 84, 491 A.2d 363 (1985); Practice Book § 4051. Wiederlight did not seek a further articulation of the factual basis for the trial court's conclusion that the covenant was valid.

competing business); see also *Torrington Creamery, Inc.* v. *Davenport,* 126 Conn. 515, 520, 12 A.2d 780 (1940) (upholding two year restriction applicable to specific and limited geographic area); *Roessler* v. *Burwell,* 119 Conn. 289, 295, 176 A. 126 (1934) (covenant restricting delicatessen products salesman from soliciting employer's customers in specific locality upheld); cf. *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 255, 108 A. 541 (1919) (invalidating covenant barring salesman for five years from selling clothes in any city where former employer operates).

In the present case, the two year limitation fairly protected the plaintiff's interests in the commercial insurance business in the Stamford area while ensuring that Wiederlight could return to commercial insurance in that area within a definite period of time. See *Scott* v. *General Iron & Welding Co.,* supra, 140. In addition, the restricted geographical area was narrowly tailored to the plaintiff's business situation in the Stamford area. The provision of paragraph nine allowing Wiederlight to work in areas north of Stamford and in Long Island, New York, demonstrated the plaintiff's caution in avoiding an overly broad geographic restriction.

Further, we are not persuaded by the defendants' theory that paragraph ten is unreasonable because it lacks a geographic limitation. Paragraph ten barred Wiederlight from soliciting the plaintiff's accounts that existed when Wiederlight left. Upon the termination of the agreement, the clause fixed the geographical scope of the covenant to a definite and limited area. Cf. *May* v. *Young,* 125 Conn. 1, 8, 2 A.2d 385 (1938) (restraint may reasonably cover actual clients or customers of employer whose business with them is subject to injury by employee); see *Tuttle* v. *Riggs-Warfield-Roloson, Inc.,* 251 Md. 45, 49, 246 A.2d 588 (1967) (agreement between insurance agency and employee barring employee from soliciting any of employer's

clients for two years valid); *Uniform Rental Div., Inc.* v. *Moreno,* 83 App. Div. 2d 629, 441 N.Y.S.2d 538 (1981) (upholding covenant barring salesman from soliciting any customers of employer for two years). Such a restriction was reasonable in view of the plaintiff's business situation, and by its own terms did not protect the employer in areas where it did not do business. *Scott* v. *General Iron & Welding Co.,* supra, 138.

The defendants assert that the scope of prohibited employment failed to protect Wiederlight's interests, especially since Wiederlight did nothing to cause the severance of his employment. It is true that in *Scott* v. *General Iron & Welding Co.,* supra, 140, we noted that the employee's interests were in part protected because the covenant only prohibited him from working as a manager but not as an employee. See also *May* v. *Young,* supra, 5. The extensive time and geographical restrictions in *Scott,* however, are not present here. Although the covenant precluded Wiederlight from any employment in a commercial insurance business, the restriction only operated for two years and only applied to the greater Stamford area. Moreover, the reasonableness of a restrictive covenant of employment does not turn on whether the employee subject to the covenant left his position voluntarily or was dismissed by the employer. Cf. *Torrington Creamery, Inc.* v. *Davenport,* supra, 520 (employer under no obligation to offer to keep employee as condition to enforcing covenant); *Kroeger* v. *Stop & Shop Cos.,* 13 Mass. App. 310, 320, 432 N.E.2d 566, appeal denied, 386 Mass. 1102, 440 N.E.2d 1175 (1982) (termination of employment at initiative of employer does not itself render noncompetition provision invalid). Similarly, we disagree with the defendants' theory that, because paragraph ten protects the plaintiff's interest in customers, the only result of paragraph nine was to prevent Wiederlight from working in the Stamford area.

The fact that an employer seeks to protect his interest in potential new customers in a reasonably limited market area as well as his existing customers at the time the employee leaves does not render the covenant unreasonable. See *Torrington Creamery, Inc.* v. *Davenport,* supra, 518–20.

The defendants further contend that the plaintiff's self-interest in protecting the Stamford commercial insurance market is outweighed by the public's interest in competitive insurance pricing and competition within the market place. We have stated that "[w]hen the character of the business and the nature of the employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights . . . . Especially if the employment involves . . . [the employee's] contacts and associations with clients or customers it is appropriate to restrain the use, when the service is ended, of the knowledge and acquaintance, so acquired, to injure or appropriate the business which the party was employed to maintain and enlarge." *May* v. *Young,* supra, 6–7.

In the present case, Wiederlight's position as a commercial insurance salesman required him to maintain extensive contacts and associations with the plaintiff's customers. The trial court's conclusion that the covenant was reasonable was consistent with evidence that the plaintiff sought to protect information regarding current and potential customers in the Stamford area. Moreover, the defendants offer no explanation for their summary suggestion that the covenant impairs the public's interest in competitive insurance pricing. There is nothing in the findings to suggest that enforcement of the restrictive covenant in paragraph nine will inter-

fere with the public's legitimate interest in open competition.[4] See *Torrington Creamery, Inc.* v. *Davenport,* supra, 519, 520 (where provision excluded defendant from engaging in milk and dairy products distribution business for two years, nothing to indicate public interest prejudiced).

The defendants finally argue that the restrictive covenant in the 1979 agreement never became operative because Wiederlight's employment agreement was not "terminated" as required by the covenant. They assert that the meaning of "termination" is derived from paragraph six of the agreement, which states that the agreement shall "not be terminated except by mutual [consent] of both parties or for cause." Since Wiederlight's agreement lapsed at the end of the four year term, they argue that the agreement was not "terminated" and therefore the restrictions in paragraphs nine and ten could not operate.

The trial court found that the contract was unambiguous and rejected the defendant's contention that the word "termination" in paragraphs nine and ten only meant termination by mutual consent or for cause. " 'The intention of the parties is to be ascertained from the language used in the contract and that language must be given its common meaning and usage where it can be sensibly applied to the subject matter of the contracts.' *Anderson* v. *Pension & Retirement Board,* 167 Conn. 352, 355 A.2d 283 [1974]." *Williams* v. *Vista Vestra, Inc.,* 178 Conn. 323, 330, 422 A.2d 274 (1979). The word terminate "means to 'come to a limit in time; to end.' " *Merchants Bank & Trust Co.* v. *New Canaan Historical Society,* 133 Conn. 706, 714, 54 A.2d 696 (1947), citing Webster's New International Dictionary

---

[4] We reject Wiederlight's additional claim that there was no evidence at all to justify the restrictive covenant. There was ample evidence in the record by which the trial court could reasonably have concluded that the covenant was fair and did not unduly burden the defendant.

(2d Ed.). Because the ordinary meaning of "termination" may include lapse or expiration, the trial court was correct in ruling that the covenant became operative when Wiederlight's contract expired.

## II

The defendant IAC claims in its cross appeal that the trial court's judgment for the plaintiff on the claim of tortious interference with contractual relations should be reversed because the plaintiff failed properly to plead or prove that IAC acted wrongfully or improperly.[5] We agree.

The third count of the plaintiff's amended complaint alleged that IAC "knew or in the exercise of reasonable care should have known" of the restrictive covenant in the Wiederlight-Weiss agreement and that, "[d]espite this knowledge either actual or constructive," IAC encouraged Wiederlight to sell insurance in violation of the agreement to IAC's financial benefit. The third count concluded that IAC's activities "constituted an interference with a contractual relationship."

" 'This court has long recognized a cause of action for tortious interference with contract rights or other business relations. (Citations omitted.) *Blake* v. *Levy,* 191 Conn. 257, 260, 464 A.2d 52 (1983).' " *Solomon* v. *Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985). Nevertheless, "not every act that disturbs a contract

---

[5] The plaintiff asserts that IAC has waived any claim on cross appeal that the complaint was legally inadequate by failing to raise this issue prior to trial. We note, however, that " '[i]t is incumbent on a plaintiff to allege some recognizable cause of action in his complaint. If he fails so to do, it is not the burden of the defendant to attempt to correct the deficiency, either by motion, [motion to strike] or otherwise.' *Stavnezer* v. *Sage-Allen & Co.,* 146 Conn. 460, 461, 152 A.2d 312 [1959]. Thus, failure by the defendants to [move to strike] any portion of the amended complaint does not prevent them from claiming that the [plaintiff] had no cause of action and that a judgment in their favor was not warranted." *Brill* v. *Ulrey,* 159 Conn. 371, 374, 269 A.2d 262 (1970).

or business expectancy is actionable. *Jones* v. *O'Connell,* [189 Conn. 648, 660–61, 458 A.2d 355 (1983)]." *Blake* v. *Levy,* supra, 260–61. " '[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously.' (Citations omitted.)" Id., 261, quoting *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 201–202, 374 A.2d 179 (1977). "[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . '[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.' " (Citations omitted.) *Blake* v. *Levy,* supra, 262; *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 279–80, 464 A.2d 57 (1983); see also *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 753, 755, 474 A.2d 780 (1984) (liability in tort imposed only if defendant acted maliciously).

The plaintiff's complaint omits the necessary allegation of improper motive or means. The assertion that IAC "encouraged" Wiederlight to sell commercial insurance in the restricted area when it knew or should have known of the covenant's terms does not fairly imply that IAC acted with "fraud, misrepresentation, intimidation or molestation" or that it acted with malice. *Blake* v. *Levy,* supra, 261. Construing the allegations most favorably to the pleader; *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 68–69, 381 A.2d 559 (1977); the most the complaint alleges is that IAC knew of the covenant's terms when it hired Wiederlight.[6] We

---

[6] In support of the sufficiency of the complaint, the plaintiff relies on *Solomon* v. *Aberman,* 196 Conn. 359, 373, 493 A.2d 193 (1985), for the proposition that conscious interference with a contract for the purpose of finan-

have stated in an analogous situation, "[t]o raise an allegation of wilful conduct, the plaintiff must clearly plead that the [harm] was caused by the wilful or malicious conduct of the defendants." *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 139, 479 A.2d 231 (1984). Moreover, we cannot look beyond the complaint for facts not alleged. *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 285–86, 449 A.2d 986 (1982).

Because the plaintiff's complaint failed to plead allegations essential to an action for tortious interference with a contractual relationship, the trial court erred in awarding the plaintiff a recovery on that basis. " 'It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. *Nash Engineering Co.* v. *Norwalk,* 137 Conn. 235, 239, 75 A.2d 496 [1950].' " *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983); *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213 (1952).

III

The plaintiff claims that the trial court erred in concluding that the plaintiff's customer list and related information pertaining to insurance accounts were not trade secrets. The alleged trade secrets included monthly production reports, containing a number of items relating to a particular agent's accounts, expiration lists, indicating the date on which accounts expired,

cial gain constitutes an improper purpose. In *Solomon,* however, our review was limited to considering whether the trial court committed clear error in finding probable cause, for the purpose of issuing a prejudgment attachment, that the defendants had committed tortious interference with the plaintiff's contractual and beneficial relations. Id., 360, 364. We upheld the trial court's finding of probable cause after noting that the court found that the defendant obtained an indirect financial benefit by improperly inducing the plaintiff's discharge from employment. Id., 374. In the present case, the plaintiff's complaint does not allege any affirmative conduct by IAC analogous to the improper conduct of the defendant in *Solomon.*

and "prospect" cards, containing data gathered by the plaintiff's sales force concerning potential customers. We disagree with the plaintiff's claim.

" 'A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound . . . or a list of customers.' Restatement, 4 Torts § 757, comment b; *Allen Mfg. Co.* v. *Loika*, [145 Conn. 509, 516, 144 A.2d 306 (1958)]." *Town & Country House & Homes Service, Inc.* v. *Evans,* 150 Conn. 314, 318, 189 A.2d 390 (1963). Although it is not essential that the proprietor have exclusive possession of the information, "a substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means." Id., 319. Depending on the nature of the business, a customer list may be a trade secret, and an employee may be restrained from using the list if he acquired it in confidence from his employer. There is no trade secret, however, if the customers' names can readily be ascertained through ordinary business channels or reference resources. Id., 319–20. The factors used to determine whether given information is a trade secret include the extent to which the information is known outside the business and by employees and others involved in the business, the measures taken by the employer to guard the secrecy of the information, the information's value to the employer and to competitors, the resources the employer expends in developing the information, and the ease or difficulty with which the information could be properly acquired or duplicated by others. Id., 319; 4 Restatement, Torts § 757, comment b.

The trial court found that during his employment with the plaintiff, Wiederlight was allowed to keep production reports that were issued to him each month. The reports provided Wiederlight with all the information necessary to solicit the insurance business of customers listed in the reports. The court also found that Wiederlight developed and serviced the customers listed in the reports, and that Wiederlight's personal relationship with each customer allowed him access to their insurance needs. Wiederlight was the only agent his customers dealt with at the plaintiff insurance agency.

The court also heard conflicting testimony regarding the extent to which the plaintiff sought to keep secret the various sources of information. Weiss testified that information on customer accounts was provided to the plaintiff's employees only on a "need to know" basis. He also testified that the plaintiff's comptroller had exclusive control over the expiration lists, which were kept in a locked cabinet. In addition, paragraph seven of the 1979 agreement established the plaintiff's proprietary interest in the business records, although it did not refer to them as trade secrets. Weiss, however, testified that summaries of the insurance policy accounts containing data on coverage, premiums, and expiration dates were kept in open and unlocked files. He also testified that Wiederlight acquired the information on the accounts he sold while working for the plaintiff by calling on the accounts himself. There was also testimony that the prospect list and vital account data could be obtained independently simply by using telephone directories or making personal contact.

We hold that the trial court was not clearly erroneous in concluding that the customer list and related insurance information were not trade secrets. *Pandolphe's*

*Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).[7]

## IV

Finally, we address the plaintiff's claims on the issue of damages. The trial court concluded that the plaintiff had sustained the burden of proof of damages for net profits lost in 1983 and 1984 through Wiederlight's sales to the plaintiff's accounts in breach of the restrictive covenant. In assessing damages, the court used certain tables, supplied by the plaintiff, that provided data on the accounts. The information included the account's name, the year the plaintiff obtained the account, and the claimed actual and projected losses for the years 1983 through 1991. To arrive at the damage figure, the trial court reduced the total amount of losses for the years 1983 and 1984 by 44 percent. The reduction included 27 percent for Weiderlight's salary compensation, 11 percent for the plaintiff's average annual loss of customers, and a 6 percent overhead factor.[8] The court, however, found that there was no credible evidence that the plaintiff's customers would have renewed their accounts after 1984, and denied damages for the period following 1984. The plaintiff argues that because the trial court awarded damages for Wiederlight's sales to its accounts in 1983–1984 based on the plaintiff's tables, it implicitly accepted that

[7] The cases relied upon by the plaintiff are distinguishable. In holding that insurance company customer lists were trade secrets, these decisions noted that the employee had been given the information by the employer and had not developed it on his own. See *Alexander & Alexander, Inc.* v. *Drayton,* 378 F. Sup. 824, 832–33 (E.D. Pa.), aff'd, 505 F.2d 729 (3d Cir. 1974); *American Republic Ins. Co.* v. *Union Fidelity Life Ins. Co.,* 295 F. Sup. 553, 555 (D. Or. 1968), aff'd, 470 F.2d 820 (9th Cir. 1972); *United Ins. Co. of America* v. *Dienno,* 248 F. Sup. 553, 555, 559 (E.D. Pa. 1965). In the present case, however, the trial court found that Wiederlight developed the customer list through his own efforts.

[8] For the year 1984, the court also excluded claims of losses pertaining to two accounts listed in the plaintiff's tables.

loss of renewals in future years was compensable, and therefore could not logically deny damages for the years following 1984. We are unpersuaded.

The trial court has broad discretion in determining whether damages are appropriate. *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 175, 530 A.2d 596 (1987). Its decision will not be disturbed on appeal absent a clear abuse of discretion. Id. To recover damages, the plaintiff must offer evidence sufficient to prove the claimed loss. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 226 n.22, 477 A.2d 988 (1984). Moreover, lost profits cannot be recovered unless it is reasonably certain that they resulted from the breach. *Burr* v. *Lichtenheim,* 190 Conn. 351, 360, 460 A.2d 1290 (1983). The amount of lost profits may be determined by approximation based on reasonable inferences and estimates. Id.

At trial, Weiss testified that the plaintiff annually lost 11.5 percent of its customers. Weiss also testified, however, that all of the plaintiff's accounts that Wiederlight sold had been accounts he had produced while working at the agency. Wiederlight testified that many of the disputed customer accounts had contacted him and sought his services after learning that he had left the plaintiff. Although other agents were assigned to contact these customers after Wiederlight left, Weiss did not know the extent of the plaintiff's subsequent contacts with the accounts.

On the basis of the evidence, the trial court could reasonably have found that the plaintiff failed to establish that it would have obtained renewals of the accounts after 1984. The trial court's conclusion that the plaintiff failed to prove damages for lost profits for the period after 1984 was not a clear abuse of discretion.[9] *Buckman* v. *People Express, Inc.,* supra, 175.

---

[9] In a similar vein, the plaintiff argues that because the trial court applied the 11.5 percent annual customer "attrition" rate to the disputed accounts

The plaintiff also contests the trial court's denial of damages for Wiederlight's breach of that part of the covenant barring him from working in the Stamford area for two years after termination of employment with it. The trial court found that there was no evidence that the plaintiff would have written any of the accounts in the restricted area had Wiederlight not breached the covenant. It concluded that the plaintiff's damage claim was speculative.

At trial, the plaintiff introduced a list of customers in the Stamford area that Wiederlight successfully had solicited during the restricted period. The data, which was supplied to the plaintiff by IAC, gave each account's name and date of inception, the total commission earned, the profit on the commission, and Wiederlight's share in the commission.

The proper measure of damages for breach of a covenant not to compete is the nonbreaching party's losses rather than the breaching party's gains. *Matter of Isbell*, 27 Bankr. 926, 929–30 (W.D. Wis. 1983); *Hyde* v. *C M Vending Co., Inc.*, 288 Ark. 218, 225, 703 S.W.2d 862 (1986); *D. W. Trowbridge Ford, Inc.* v. *Galyen*, 200 Neb. 103, 107, 262 N.W.2d 442 (1978); *Vermont Electric Supply Co.* v. *Andrus*, 135 Vt. 190, 192, 373 A.2d 531 (1977). The plaintiff seeks to establish its lost profits by reference to the undisputed fact that Wiederlight sold commercial insurance to customers in the restricted area during the covenant's operation. To permit the plaintiff to recover damages merely by proving that the defendant breached the covenant, however, would ignore the well established rule that damages are essential to the plaintiff's proof and must be shown with rea-

---

for 1983–1984, it was bound to assume that those accounts would have a longevity greater than two years. Simply because the court applied the average attrition rate to the disputed accounts for 1983–1984, however, did not require it to make a finding, in the absence of credible evidence, that the plaintiff would have renewed those accounts after 1984.

sonable clarity. *Milgrim* v. *Deluca,* 195 Conn. 191, 199, 487 A.2d 522 (1985); *Fuessenich* v. *DiNardo,* 195 Conn. 144, 154, 487 A.2d 514 (1985); *Conaway* v. *Prestia,* 191 Conn. 484, 493–94, 464 A.2d 847 (1983). The trial court did not abuse its discretion in denying the plaintiff damages for Wiederlight's breach of paragraph nine of the covenant. *Buckman* v. *People Express, Inc.,* supra, 175.

There is no error in the plaintiff's appeal. There is error in the defendants' cross appeal, the judgment against IAC for tortious interference with contract is set aside and the case is remanded to the trial court with direction to render judgment in favor of the defendant IAC.

In this opinion the other justices concurred.