[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
INTRODUCTION
The complaint in this case alleges that the defendant breached a covenant not to compete contained in an employment agreement entered into by him and his employer, John P. Ranciato, Jr., d/b/a Historic Restoration and Appraisal. The evidence established that the plaintiff Historic Restoration and Appraisal, L.L.C., is the successor to the plaintiff John P. Ranciato, Jr., d/b/a Historic Restoration and Appraisal. (Both plaintiffs are hereinafter, collectively, referred to as the "plaintiff".)
The complaint seeks injunctive relief restraining the defendant from competing with the plaintiff until January 23, 2000, as well as liquidated damages and attorney's fees. With the passage of time between the filing of the complaint and the trial, the claim for injunctive relief became moot, and the plaintiff has abandoned it.
FACTS
From the testimony and exhibits, the following facts are found:
1. The plaintiff was in the business (hereinafter, CT Page 1532 generically, the "restoration business") of restoring buildings, primarily detached single family homes, which suffered casualty damage, primarily fire and water damage;
 2. The restoration business in Connecticut is highly competitive;
 3. Most of the jobs which the plaintiff undertook were in Connecticut, although the plaintiff did one job in south central Massachusetts and some work in Rhode Island, close to the Connecticut border;
 4. The plaintiff was not registered in Massachusetts or Rhode Island to engage in what is known in Connecticut as the home improvement business;
 5. Sometime prior to his employment by the plaintiff, the defendant owned his own contracting firm, which specialized in painting;
 6. Immediately before his employment by the plaintiff, the defendant was employed by a construction firm known as Gilbane;
 7. The defendant was experienced in the restoration business when he became employed by the plaintiff;
 8. The defendant began working for the plaintiff on November 18, 1996;
 9. After the defendant began working for the plaintiff, the defendant was told by the plaintiff that his employment would be terminated if he did not execute an employment agreement containing covenants not to compete;
 10. Sometime after November 18, 1996, the plaintiff presented to the defendant a draft (the "draft") of an employment agreement, which had been prepared by an attorney for the plaintiff and which contained covenants not to compete;
11. The defendant negotiated two changes (the CT Page 1533 "changes") in the draft which provided that if his employment were terminated without cause, he would receive two weeks salary as severance pay, and which provided that after his employment by the plaintiff terminated, he could engage in the home improvement business, but not in the restoration business;
 12. Paragraph 15 of the final draft of the employment agreement (the "employment agreement"), which was executed by the parties on November 21, 1996, contains the covenant on which this action is based and states:
 Employee agrees that the trade secrets and other confidential business information of HRA constitute the vital components and interests of HRA's business, and that the specialized training and instruction by HRA are of considerable value and render unique and special the skills of the Employee, and therefore, Employee agrees that while employed with HRA and for a period of three (3) years after the termination, for any reason, of his employment with HRA, Employee will not, directly or indirectly, by himself or in conjunction with any person, firm, organization or corporation, engage in any fire or casualty restoration or cleaning business, public insurance adjusting, and/or sales of fire or casualty restoration services including but not limited to estimating and adjusting claims, in which Employee's duties would entail the sales, consulting, contracting, estimating, and/or adjusting in the fields in competition with HRA, and where Employee's duties would be performed, in whole or part, in the area within the States of Connecticut, Rhode Island and Massachusetts. It is understood that Employee's engagement in painting or home improvements to property that has not been damaged by fire or casualty is not restricted by the foregoing.
13. The defendant believed that if he did not execute the employment agreement, his employment by the plaintiff would be terminated; CT Page 1534
 14. The defendant did not have an attorney assist or advise him in regard to the negotiation or execution of the employment agreement;
 15. The plaintiff hired the defendant to perform a project manager's functions, and the defendant did not participate in the management of the plaintiff's business, did not sell or market the plaintiff's services and did not have contact with the plaintiff's customers;
 16. Pursuant to the employment agreement, the defendant's salary was $48,500 per annum;
 17. The plaintiff learned that the defendant had received obscene material on the plaintiff's FAX machine and directed the defendant to see that no further obscene material was transmitted to him;
 18. Subsequently, the plaintiff learned that the defendant had again received obscene material on its FAX machine, and the plaintiff terminated the defendant's employment on January 24, 1997;
 19. Pursuant to the employment agreement, the plaintiff paid the defendant two weeks salary as severance pay;
 20. The plaintiff did not discharge the defendant for cause, within the meaning of the employment agreement;
 21. The plaintiff was permitted only limited access to the defendant's business information;
 22. At the time the defendant executed the employment agreement and at the time he was discharged, he neither knew, nor had any way of knowing, if the plaintiff had any trade secrets or confidential information;
23. It is in the nature of the restoration business that few customers suffer more than one fire or water damage loss, so that the names of a firm's customers are not of great importance in business development; CT Page 1535
 24. Each competitor in the restoration business in Connecticut obtains most of its customers in one of two ways: either by referral from an insurance company which insured a property that sustained a loss (firms in this group are commonly referred to in the restoration business as "preferred builders"), or by learning from police and fire scanners, or from people who monitor such scanners, of a building where a loss is occurring or has occurred (firms in this latter group are commonly referred to in the restoration business as "fire-chasers", and their prices are generally higher than the prices of preferred builders);
25. The plaintiff was a fire-chaser;
 26. The methods of operation, including the method of obtaining customers, which were employed by the plaintiff were not unique or extraordinary and were known to the other firms in the restoration business in Connecticut;
27. The plaintiff had no trade secrets;
 28. After he was discharged by the plaintiff, the defendant became employed by J.P. McGuire Associates ("McGuire"), which was a preferred builder in the restoration business, where he performed marketing and business development services;
 29. As a preferred builder, McGuire did not compete with the plaintiff for the same customers;
 30. The plaintiff suffered no financial loss as a result of the defendant's employment by McGuire;
31. Employees (other than relatives of John P. Ranciato, Jr.) at all levels of plaintiff's organization, including carpenters, were required to sign employment agreements which contained language identical to that in the agreement executed by the defendant (except for the provisions negotiated by him which relate to severance pay and the home improvement business); CT Page 1536
 32. The plaintiff had no significant, existing business interests which required protection in Massachusetts, Rhode Island or parts of Connecticut which are distant from New Haven during the 67 days when the defendant was employed by the plaintiff;
 33. Prohibiting the defendant, who did not have any information about the plaintiff's business which would assist a competitor in competing against the plaintiff and who did not acquire any special or unique skills while in the plaintiff's employ, from competing with the plaintiff for a period of three years after the termination of his employment would have been extremely burdensome to the defendant.
DISCUSSION
 In Competition With
Paragraph 15 of the employment agreement restrains the defendant from engaging in several types of activities "in competition with" the plaintiff. Accordingly, only if McGuire was "in competition with" the plaintiff can the defendant be held to have violated that provision.
By giving the phrase "in competition with" its broadest and most academic interpretation. one could find that McGuire and the plaintiff, being in the same industry, were, technically, competitors. That interpretation, however, would fly in the face of long standing doctrines which provide that contracts are to be construed narrowly and against the drafter; Sturman v. Socha, 191 Conn. 1, 9, 463 A.2d 527 (1983); and which provide that restrictive covenants are to be construed in a way which protects only the real, and not the theoretical, business interests of a former employer. May v. Young, 125 Conn. 1, 5, 2 A.2d 385 (1938).
The employment agreement was drafted by the plaintiff's attorney. The court, therefore, construes the phrase "in competition with" narrowly against the plaintiff to mean competing for the same customers. Because it has been found that McGuire did not compete with the plaintiff for the same customers, the defendant, simply by being employed by McGuire, was not in competition with the plaintiff and thus did not violate paragraph 15 of the employment agreement.
Interests To Be Protected
CT Page 1537
In May v. Young, supra, 125 Conn. 5, the court articulated those interests of an employer which are protectable as follows:
 A covenant restricting the activities of an employee must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made. . . .
 If such a restriction is to be upheld and enforced it must be reasonably necessary for the fair protection of the employer's business, good will or right. . . .
(Citations omitted; internal quotation marks omitted.)
The May court went on to say:
 Employments which involve acquisition of confidential knowledge involved in the business and acquaintance with the employer's clientele are regarded as particularly appropriate to restrictions against the use of such knowledge in competition with the employer.
Id., 7.
In Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525,533, 546 A.2d 216 (1988), our Supreme Court cited with approval the following excerpt from May:
 When the character of the business and the nature of the employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights. . . .
(Internal quotation marks omitted.) quoting May v. Young, supra,125 Conn. 6-7.
In light of the findings that McGuire was not in competition with the plaintiff, that the plaintiff suffered no financial loss as a result of the defendant's employment by McGuire, that the plaintiff had no trade secrets, that the defendant did not acquire any special or unique skills CT Page 1538 while in the plaintiff's employ, that the names of past customers are not of great importance to the development of future business in the restoration business, that the defendant had no contact with the plaintiff's customers and that the plaintiff's methods of operation were known by its competitors, it is held that the plaintiff had no business interests which would have been protected by restraining the defendant from working in the restoration business.
Time and Area
In Weiss, the court declared that "time and geographic restrictions in a covenant not to compete are valid if they are reasonably limited and fairly protect the interests of both parties." Robert S. Weiss Associates, Inc. v. Wiederlight., supra, 208 Conn. 530. Applying that standard to the three year limitation on the defendant's activities, it is held that three years is not "reasonably limited."
Weiss requires that a geographic restriction be narrowly tailored to that area in which an employer has interests which would benefit from protection. Id., 531. Because the only business interests of the plaintiff which could benefit from protection were in the New Haven area, it is held that the three state restriction imposed on the defendant was not necessary to protect any legitimate interests of the plaintiff and, therefore, was not "reasonably limited."
As found above, carpenters employed by the plaintiff were required to execute covenants not to compete as a condition of employment. Presumably these carpenters knew their trade before becoming employed by the plaintiff. Moreover, they did not develop relationships with, or knowledge of, customers of the plaintiff who might need restoration services in the future. These facts match those in Entex Information Services, Inc. v.Behrens, Superior Court, judicial district of Hartford at Hartford, Docket No. 593692 (March 17, 2000, Freed, J.), in which Judge Freed said:
 Under the facts of this case, this court holds that an intention to hold an employee for no other purpose than to prevent that employee from working for a competitor is unreasonable.
The court concludes, as Judge Freed did in Entex, that the plaintiff's purpose in requiring the defendant to accept an overreaching restrictive covenant was not to protect legitimate business interests, but rather to prevent him from working for competitors.
Blue Pencil
CT Page 1539
The plaintiff has urged the court to utilize paragraph 19 of the employment agreement to cut down any restriction which the court finds unreasonable. That paragraph states:
 In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If, moreover, any provision contained in this Agreement shall, for any reason, be held to be excessively broad as to time, duration, geographical scope, activity or subject, it shall be deemed amended to the extent necessary for such provision to be held valid and enforceable.
While Connecticut recognizes the existence of the "blue pencil doctrine," Beit v. Beit, 135 Conn. 195, 63 A.2d 161 (1948), no evidence has been introduced from which the court can establish the appropriate boundaries of time or geography within which any business interest of the plaintiff would benefit from protection. The court, therefore, declines to take a blue pencil to paragraph 15 of the employment agreement.
Liquidated Damages
Paragraph 18 of the employment agreement provides:
Employee acknowledges and recognizes that the specialized training and instruction by HRA are of considerable value and the services of Employee under this Agreement are of a special, unique, unusual, extraordinary and intellectual character, which gives them a particular value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and that irreparable injury or damage will result to the business of HRA in the event of the breach of any covenant contained in this Agreement. Therefore, Employee agrees that HRA will be entitled to injunctive and equitable relief to restrain the violation of the terms and covenants contained in this Agreement, damages in such event would be difficult of ascertainment, though great and irreparable, and that a reasonable and fair estimate of the amount of CT Page 1540 liquidated damages which would be sustained by HRA as a result of the breach of the terms and covenants contained in this Agreement and due and payable by Employee to HRA will be the sum of (a) Twenty Thousand and 00/100 ($20,000.00) Dollars and (b) an amount, payable monthly, equal to fifty percent (50%) of the gross fees produced by Employee during the three (3) year period referenced in paragraphs 3, 16, and 17, gross fees shall be interpreted as gross compensation received directly or indirectly by Employee. Such damages are liquidated damages and not a penalty. Additionally, HRA shall have the additional right and remedy of applying to any court of competent jurisdiction for an injunction to restrain Employee from continuing any violation of this Agreement.
In Norwalk Door Closer Co. v. Eagle Lock Screw Co., 153 Conn. 681,688, 220 A.2d 263 (1966), the court observed:
 [N]o provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court sees that no damage has been sustained. . . . This principle finds approval in comment (e) of the Restatement, 1 Contracts § 339, where it is stated that "[i]f the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, when in fact the breach causes no harm at all or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach . . . is not enforceable."
(Citations omitted; internal quotation marks omitted).
Because it has been found that the plaintiff suffered no financial loss as a result of the defendant's employment by McGuire, it is held that the liquidated damages provisions of paragraph 18 are not enforceable in this case.
CONCLUSION
Judgment is entered in favor of the defendant.
G. Levine, J. CT Page 1541