[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 27, 2002 the court (Hadden, J.T.R.) heard the plaintiff (Merryfield) application for a temporary injunction against the defendant Morgan MacKay, a doctor of veterinary medicine (MacKay). On July 31, 2002 the court (Hadden, J.T.R.) denied the application for a temporary injunction on the grounds "that the restriction is so broad that it is not reasonably necessary for the fair protection of the plaintiffs business." Memorandum of Decision, July 31, 2002. The court found that paragraph 6 of the contract of employment (Exhibit 2) dated June 4, 2001 afforded greater protection to the plaintiff than is reasonably necessary and the non-compete covenant is unenforceable. (Page 11 of Memorandum of Decision, July 31, 2002).
The pleadings in this case were closed after the denial of the application for the temporary injunction on August 26, 2002. The defendant admitted terminating his services to Merryfield. However he alleged that the termination was on the grounds that he could no longer tolerate the veterinarian service practices that were occurring at Merryfield. (See paragraph 12 of Answer). The defendant also raised two affirmative defenses; the non-compete agreement overly protects plaintiffs interest and is unenforceable; and the affirmative defense of a breach of contract on the part of the plaintiff which has not been proven by the defendant in this action. First, the breach was not claimed in writing as required by Paragraph 7(d) of the contract (Exhibit 2) and also having continued his employment and accepting the benefits and salaries under the terms of the contract constituted both a waiver and estoppel for a claim of breach of contract.
Dr. MacKay, became employed by Merry field with two successive contracts Exhibit 1 for the period of time May 15, 2000 to May 15, 2001 and Exhibit 2 from May 1, 2001 for a period of one year until on or around April 30, 2002. There was adequate consideration for the execution of the contracts, in fact MacKay was given a substantial raise in pay upon the execution of Exhibit 2. CT Page 16185
MacKay on April 16. 2002 gave written notice of his termination by letter. MacKay accepted a position with New Haven Central Hospital which is 6.2 miles by car to the State Street office of New Haven Central. The non-compete area was for a 7 mile radius from the Merryfield office. (See Exhibit 4).
Dr. Engstrom who is a veterinarian is the owner of Merry field which has been in operation since 1964. New Haven Central Hospital acts as a referral hospital for Merryfield for emergency treatment when Merryfield is closed. MacKay accepted a position at New Haven Central for $10,000 less than his salary at Merryfield. The evidence showed that after MacKay went to work for New Haven Central he did everything in his power to avoid competing with Merryfield and if he gave emergency treatment he referred the pet owners back to Merryfield. The defendant in this case argues that "[A] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Branch v. Occhionero, 239 Conn. 199, 207 681 A.2d 306 (1996). MacKay has worked for New Haven Central Hospital since his termination with Merryfield to the date of trial yet Merryfield has failed to prove that because of MacKay's interaction with Merryfield Emergency calls that Merry field lost any clients. In fact MacKay has rejected any prior client for treatment knowingly a client of Merryfield. Merryfield has not identified or produced any loss of their pet owners to New Haven Central because of MacKay's employment nor any monetary losses.
The only issue before this court based upon the evidence adduced at trial is the enforceability of the non-compete clause, paragraph 6 of Exhibit 2 which provides as follows:
"Non-compete covenant. The employee agrees that he will not own, manage, operate, control, be employed by, participate or be connected in any manner with the ownership, management, operation or control of any business or profession engaged in veterinary services during the term of this agreement and for a period of two (2) years after the termination thereof for any reason, within a seven (7) mile radius from any of the company's locations."
The inquiry as to the validity and enforceability of the restrictive covenant itself requires a balancing of the equities between plaintiff and defendant. Scott v. General Iron Welding Co., 171 Conn. 132, 137,368 A.2d 111 (1976) (To be valid and enforceable, a restrictive covenant "should afford only a fair protection to the interest of the party in whose favor it is made and . . . [t]he interests of the employee himself must also be protected. . . ."; Robert S. Weiss Associates, Inc. v.CT Page 16186Wiederlight, 208 Conn. 525, 529 n. 2, 546 A.2d 216 (1988) (The factors to be considered in evaluating the enforceability of a restrictive covenant include, inter alia, "the fairness of the protection accorded to the employer . . . [and] the extent on the restraint on the employee's opportunity to pursue his occupation. . . .").
"In order to be valid and binding, a covenant which restricts the activities of an employee following the termination of his employment must be partial and restricted in its operation in respect either to time or place, . . . and must be reasonable — that is, it should afford only a fair protection to the interest of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public. . . . The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms if the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family." (Citations and internal quotation marks omitted.) Scott v. General Iron Welding Co., supra, 171 Conn. 137. Thus, "[t]he five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are: (1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." (Citations omitted.) RobertS. Weiss Associates, Inc. v. Wiederlight, supra, 208 Conn. 529 n. 2. "The five prong test of Scott is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." New Haven Tobacco Co. v.Perrelli, 18 Conn. App. 531, 534, 559 A.2d 715, cert. denied,212 Conn. 809, 564 A.2d 1071 (1989).
The argument of the defendant MacKay asserts that the non-compete agreement is in fact not limited within a restricted geographical area. The clause also prevents MacKay from being employed in any capacity
within any entity that provides veterinary services. The restriction prohibits management and non-management jobs. It prohibits MacKay from being employed as an independent contractor or consultant. It even prohibits being engaged in any veterinary service even beyond what Merryfield may be doing at their hospital. Merryfield does not treat horses, cattle, sheep or swine and does not ordinarily treat reptiles and birds. The protection afforded under the restrictive covenant in this case is overly broad and goes beyond the reasonable protective interests of Merryfield. According to MacKay the operation of the restriction goes beyond the seven mile radius since MacKay would not be able to bring an animal to New Haven Central if he was employed outside the seven miles in CT Page 16187 a facility that did not have surgical facilities. Most facilities outside the restricted area in this case do not have surgical facilities. MacKay would not even be able to work for his own clients. Such a restrictive covenant would interfere with the public's right to chose their own doctor.
The language of the restrictive covenant of veterinarian services even would prevent MacKay from working as a meat inspector which is beyond the protection for Merryfield. The phrase "veterinarian services" would include meat inspection, something Merryfield does not even engage in.
MacKay, a Canadian citizen, who lived in a small town in Canada practicing veterinarian medicine interacted with Merryfield to advance his economic career, entering into his first employment contract with Merryfield (Exhibit 1) which contained the same non-compete clause as Exhibit 2. MacKay received a NAFTA work visa which specifically allowed him to work for Merryfield. In order to work for New Haven Central he was also required to have New Haven Central sign a similar application for a work visa which is customarily granted by just going back over the border to Canada. MacKay was not listed on any letterhead of New Haven Central or made any solicitation of Merryfield clients of the 10, 000 to 12, 000 clients of Merryfield. MacKay came into contact with just 5 clients of Merryfield. Two came to New Haven Central under emergency situations and MacKay did not see either pet again.
Using the criteria of Scott supra the defendant has proven that the covenant not to compete in this case is unreasonably broad in that it affords more protection to the employer. It interferes with the interests of the public; the employee MacKay is precluded from pursuing his occupation.
Additionally there has been no showing that Merryfield will suffer irreparable harm or any of his clients has been attracted to use New Haven Central because of MacKay's employment there. Finally the equities not to issue an injunction fall in favor of the defendant.
Accordingly, application to enforce the non-compete clause of the employment contract is denied.
___________________ Frank S. Meadow, J.T.R. CT Page 16188