Ball, J.
The plaintiff, TKO, Inc. (“TKO”), brought this action against the defendants Francis Gentle,[1] Francis Gentle, Inc. (“Gentle, Inc.”), and Eugene Reilly d/b/a Eastern Medical and G & R Reilly (“Reilly”) alleging breach of contract, tortious interference with contractual relations, and violations of G.L.c. 93A, § 11. All claims arise out of an employment relationship between the plaintiff and the defendants. TKO now moves for summary judgment against Gentle, Inc. and Reilly, asserting that no genuine issues of material fact exist precluding judgment in its favor. Gentle, Inc. does not oppose TKO’s summary judgment motion; Reilly, in opposition to TKO’s motion, filed a cross-motion for summary judgment asserting that as a matter of law judgment should enter on its behalf. For the following reasons, based upon the memoranda and arguments of counsel, TKO’s motion for summary judgment against defendant Francis Gentle, Inc. is ALLOWED, TKO’s motion for summary judgment against defendant Reilly is ALLOWED in part and DENIED in part, and Reilly’s cross-motion for summary judgment against TKO is DENIED.
BACKGROUND
TKO, a Connecticut corporation, is a manufacturer’s representative in the medical equipment field. TKO employed, as independent contractors, the defendants Francis Gentle and Eugene Reilly in the capacity of sales representatives. Prior to joining TKO in 1993, Gentle had no experience in medical equipment sales. In 1993, all sales representatives, including Gentle and Reilly, were given agency agreements to sign, detailing the agency agreement between TKO and its contractors.
Covenants not to compete and covenants not to solicit, as well as a choice of law provision, were contained in both Gentle’s[2] and Reilly’s[3] agreements, which each signed.[4] During the relevant time periods to this action, *141 Gentle was under a six-month non-compete restriction and, after January 1, 1994, a two-year non-solicitation restriction. Until 1994, Reilly was under six-month non-compete and non-solicitation restrictions.
Gentle renewed the agency agreement with TKO in January of 1994. Reilly, however, decided not to renew the agency agreement with TKO and instead began operating Eastern Medical, a company competing with TKO. Robert Tomassetti (“Tomassetti"), the president of TKO, acknowledged Reilly’s decision in a letter dated January 5, 1994, in which Tomassetti, on behalf of TKO, cautioned Reilly that he must comply with the terms of his non-compete agreement.[5]
Sometime in May of 1994 Tomassetti, on behalf of TKO, raised the possibility with Reilly of utilizing Gentle as a combined sales person for TKO and Eastern Medical. No agreement was reached between the parties relative to this possibility.
On or about the week of July 4, 1994, Gentle, while still under contract with TKO,[6] and without TKO’s knowledge or consent, began working for Reilly at Eastern Medical. On at least two occasions prior to August 18, 1994, Tomassetti questioned Gentle about his working for Reilly; at no time did Gentle admit that he was working for Reilly or Eastern Medical.
On or about August 18, 1994, Tomassetti, on behalf of TKO, terminated Gentle from his agency agreement with TKO because of a breach of that agreement. On the same date, Tomassetti informed Reilly of Gentle’s breach.[7]
Based upon the above detailed events, TKO brought this action against Gentle individually, Gentle, Inc., and Reilly.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law based upon review of the summary judgment record. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving parly is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eisnner, 405 Mass. 207, 209 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis, 410 Mass. at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Vague and general allegations of expected proof are not enough to defeat a summary judgment motion. Cherella v. Phoenix Technologies, Ltd., 32 Mass.App.Ct. 919, 920 (1992).
In the present case, the parties contracted in the agency agreement that Connecticut law would govern. It is well settled that parties to a contract may express a choice as to the law which will govern any dispute between the parties. See Elgar v. Elgar, 238 Conn. 839, 848 (1996). Connecticut law gives effect to such choice of law provisions made by the parties to a contract provided that the choice was made in good faith. Id. The parties do not dispute the validity of the choice of law provision in the instant action. Accordingly, Connecticut law shall apply.[8]
As a general rule, interpretation of the terms of an unambiguous contract or agreement raise not questions of fact, but only questions of law. Mulligan v. Rioux, 229 Conn. 716, 740 (1994). In interpreting an agreement, unambiguous terms are construed and enforced according to their plain meaning. See Sims v. Honda Motor Co. Ltd., 225 Conn. 401, 415 (1993). The parties have not raised any argument, nor could they on the facts before me, that the agreement or its terms were ambiguous. Accordingly, the agreement and its terms will be construed and enforced according to their plain meaning.
I. FRANCIS GENTLE, INC.
Although Francis Gentle individually filed for bankruptcy subsequent to the initiation of the instant action, and all proceedings against him personally have been stayed, Francis Gentle, Inc. is unaffected by the bankruptcy petition. In its complaint against Gentle, Inc., TKO asserts two counts of breach of contract and one count of a violation of the Consumer Protection Act, as set forth in G.L.c. 93A, §11. It is these counts on which TKO now moves for summary judgment against Gentle, Inc.
Gentle, Inc. has filed no opposition to TKO’s motion for summary judgment, thus leading this court to ttre conclusion that no genuine issue of material fact exists which would preclude granting TKO’s motion. As no opposition was filed, and no appearance was made during the hearing on the summary judgment motion, I conclude that no genuine issues of material fact exist and that, as a matter of law, TKO is entitled to judgment on the issue of liability only. Only the issue of damages remains for determination, after trial, by a jury.
II. EUGENE REILLY d/b/a EASTERN MEDICAL and G & R REILLY
TKO moves for summary judgment on all three claims against Reilly: breach of contract, tortious *142 interference with contractual relations, and a violation of G.L.c. 93A, §11. In opposition, Reilly also moves for summary judgment on all counts against TKO.
A. Count III (Breach of Contract)
TKO asserts that Reilly, through his work at Eastern Medical, breached the terms of his agency agreement by violating the six month non-compete and non-solicit clauses contained in Part 5 of the agreement. TKO argues that, as a matter of law, the agency agreement was reasonable and that Reilly’s breach entitles TKO to judgment. Reilly asserts, however, that genuine issues of material fact exist as to the reasonableness of the agency agreement precluding summary judgment in favor of TKO. Further, Reilly advances two affirmative defenses precluding TKO’s recovery: estoppel and waiver.
Under Connecticut law, five factors must be considered when evaluating the reasonableness of a restrictive covenant, such as a non-compete and non-solicit agreement, in an agency or employment agreement: (1) the length of time of the restriction; (2) the geographical area(s) to which the agreement applies: (3) the fairness of the employer’s protection; (4) the extent of the impact of the restraint on the employee’s opportunity to pursue his livelihood; and (5) the extent of interference with the interests of the public. Weiss and Associates, Inc. v. Wiederlight, 208 Conn. 525, 529 n.2 (1988), citing Scott v. General Iron & Welding Co., 171 Conn. 132, 137 (1976). The non-compete and non-solicit restrictions must satisfy the above requirements in order to be valid against Reilly in the present case.
Time and geographic limitations are deemed valid if they are “reasonably limited and fairly protect the interests of both parties.” Wiederlight, 208 Conn. at 530. Although Reilly asserts that genuine issues of material fact exist which question the reasonableness of the geographic restriction, this mere assertion of disputed facts alone cannot defeat TKO’s motion for summary judgment. See LaLonde, 405 Mass. at 209. Here, the six month limitation in the same geographic area which comprised Reilly’s territory is without question narrowly tailored to TKO’s particular business situation. See Wiederlight, 208 Conn. at 531. The fact that TKO restricted the geographic limitation only to Reilly’s territory, and did not extend it into the territory of any other sales representative, demonstrates TKO’s “caution in avoiding an overly broad geographic restriction.” Id.
Moreover, I find that the protection the restriction offered to TKO was fair and reasonable in the circumstances of this case. TKO had an interest in protecting its territories, products, and manufacturers it represented; a six month restriction on its former agents is entirely reasonable. Similarly, Reilly’s ability to pursue his occupation was not unreasonably impaired by this restriction. Reilly had complete freedom to conduct the same business in areas not part of his territoiy at TKO. The extent of his restriction, in both time and geography, was not unreasonable under these circumstances. Finally, the non-compete and non-solicit restrictions in no way affected or interfered with the public’s interests. This is not a situation in which the public has been deprived of a service or opportunity because of the non-compete or non-solicit restrictions.
Notwithstanding the reasonableness of the agency agreement and its restrictions, Reilly asserts as an affirmative defense that estoppel precludes TKO from recovering on its breach of contract claim. I disagree. Reilly’s estoppel theory is based upon statements made by Tomassetti prior to Reilly signing the agency agreement in January of Í993. It is undisputed that Tomassetti told Reilly that he (Tomassetti) would not hold Reilly to the non-compete agreement “as long as he (Reilly) went off in a proper manner.” In fact, it can be inferred from the January 5, 1994 letter to Reilly that Tomassetti would assist him in his new endeavor.
Reilly asserts that Tomassetti’s assurance that he would not hold Reilly to the terms of the non-compete agreement estops TKO from now alleging breach of contract. I am unpersuaded by this argument for two reasons. First, I find that the terms of the agreement clearly void any prior oral agreements between the parties.[9] Finding as I do that the language of the agreement is unambiguous and as such must be construed and enforced according to its plain meaning, the language of Paragraph 8 (see footnote 4, ante) is sufficient to defeat Reilly’s estoppel argument. Second, even if I believed that Tomassetti’s assurance survived the written agreement, I find Tomassetti did exactly what he promised: he did not enforce the non-compete and, indeed, may have helped Reilly by referring business to Eastern Medical, until he learned that Reilly had hired Gentle. In other words, Tomassetti did not enforce the non-compete until he found that, in his view, Reilly did not “[go] off in a proper manner.’’[10]
Reilly’s reliance on TKO’s inaction immediately after the termination of the agency agreement also forms the basis of his second affirmative defense of waiver. Reilly argues that because TKO knew about his connection to Eastern Medical, referred business to him during the first quarter of 1994, and never attempted to prohibit Reilly from conducting his business during that time, TKO has now waived its rights to pursue a breach of contract claim. What this argument fails to take into account is that TKO did not relinquish any of its rights to pursue an action if Reilly did not “[go] off in a proper manner.” Reilly asserts that the January 5, 1994 letter from TKO is somehow sufficient to show an intentional relinquishment of rights. To the contrary, as discussed earlier, the letter clearly cautions Reilly not to violate the terms of his non-compete agreement. Thus, Reilly’s mere assertion of the existence of waiver does not overcome TKO’s entitlement to summary judgment on the breach of contract claim (Count III).[11]
*143 B. Count IV (Tortious Interference with Contractual Relations)
TKO asserts that Reilly tortiously interfered with TKO’s contractual relations with Gentle by hiring Gentle to work for Eastern Medical. To establish such a claim, TKO must prove (1) the existence of a contractual or beneficial relationship, (2) that the defendant knew of the relationship, (3) that the defendant intended to interfere with the relationship, (4) that the interference was tortious, and (5) that the plaintiff suffered a loss as a result. Wiederlight, 208 Conn. at 535-36; Solomon v. Aberman, 196 Conn. 359, 364 (1985).
Reilly testified in his deposition that he did not know the details of Gentle’s agreement with TKO, and further, that he considered them none of his business. While on the facts before me I might reasonably infer that, because Reilly signed a similar agreement when he was still at TKO, Reilly must have known of the specifics of the 1993 agreement Gentle signed, nothing in the evidence submitted by TKO conclusively establishes that Reilly knew the details of Gentle’s 1994 agreement. Indeed, it is conceivable that Reilly could have believed that Gentle had entered into a modification of his non-compete and non-solicit agreements.
TKO’s complaint does not address the precise time period in which the alleged tort occurred. Thus, the question of fact regarding Reilly’s knowledge of the details of the agreement between TKO and Gentle, at least prior to Reilly’s receipt of Tomassetti’s August 18, 1994 letter, means that I cannot find, as a matter of law, that Reilly intended to interfere with the agreement between Gentle and TKO or that such interference was tortious. Wiederlight, 208 Conn. at 535-36.
C. Count VI (Violation of G.L.c. 93A, §11)
In my discretion, I deny TKO’s motion for summary judgment, and Reilly’s cross-motion for summary judgment, as to the 93A claim. I note that, as mentioned above, there are questions of fact regarding Reilly’s knowledge of the details of Gentle’s agreement with TKO as well as questions of fact regarding Reilly’s intentions with respect to competition with TKO. Even if one might find on the unrebutted facts before me that Reilly’s actions in conjunction with Gentle constituted unfair business practices in violation of G.L.c. 93A, §11, damages remain to be assessed by a fact-finder. In order to assess damages on the 93A claim, the trial judge will need to hear the facts which underlie it. In addition, the tort-based claim against Reilly, which has survived summary judgment and must be tried, involves many of the same facts as the 93A claim. Thus, it makes sense to deny both parties’ motions for summary judgment on the 93A claim and refer both liability and damages on that claim to the trial judge.
ORDER
For the foregoing reasons it is ORDERED that TKO’s motion for summary judgment as to Francis Gentle, Inc. on the issue of liability only be ALLOWED, that TKO’s motion for summary judgment against Reilly for breach of contract on the issue of liability only be ALLOWED, that TKO’s motion for summary judgment against Reilly for tortious interference with contractual relations and for violation of G.L.C.93A, §11 be DENIED, and that Reilly’s cross-motion for summary judgment, accordingly, be DENIED.

 After the pending action was filed, Francis Gentle filed for bankruptcy and a stay of all proceedings against him personally was entered. The bankruptcy petition has not, however, affected either Francis Gentle, Inc. or Eugene Reilly d/b/a Eastern Medical and G & R Reilly.

 Gentle signed two separate agency agreements with TKO. The first, effective March 1, 1993, contained the following non-compete and non-solicit agreement:
5) COVENANTS NOT TO COMPETE, TRADE SECRETS AND LIMITATIONS. . .
B) AGENT agrees for a period of six (6) months following termination of this AGREEMENT, by either party, that neither he nor any company in which he is involved as either a sole proprietor, partner, shareholder, owner, officer, director or agent shall, without prior written approval from TKO:
1) Engage in the distribution, manufacture or sale of medical equipment, in the area describes [sic] in Exhibit B.
2) Disclose to any person, company or entity the names of and/or information relative to all customers of any manufacturer, acquired by AGENT or TKO, as a result of AGENTS performance of his duties under this AGREEMENT.
3) Disclose to any person, company or entity, the names of any, or any information about the products sold or supplies of products sold including but not limiting [sic] to prices charged or quoted, by AGENT and/or TKO.
4) Solicit, from the manufacturers, representation rights for products represented by TKO.
C) In the event any provisions or portions of paragraph five (5) are found to be invalid or unenforceable, the remainder of paragraph five (5) shall nevertheless remain in full force and effect.
The second agency agreement Gentle signed, effective January 1, 1994, reiterated the non-compete agreement, but changed the non-solicit clause to encompass a period of two years:
5) COVENANTS NOT TO COMPETE, TRADE SECRETS AND LIMITATIONS. . .
B) AGENT agrees for a period of six (6) months following termination of this AGREEMENT, by either party, that neither he nor any company in which he is involved as either a sole proprietor, partner, shareholder, owner, officer, director or agent shall, without prior written approval from TKO:
1) Engage in the distribution, manufacture or sale of medical equipment, in the area describes [sic] in Exhibit B.
2) Disclose to any person, company or entity the names of and/or information relative to all customers of any manufacturer, acquired by AGENT or TKO, as a result of AGENTs performance of his duties under this AGREEMENT.
3) Disclose to any person, company or entity, the names of any, or any information about the products sold or *144 supplies of products sold including but not limiting [sic] to prices charged or quoted, by AGENT and/or TKO.
C) AGENT agrees for a period of two years following termination of this AGREEMENT, by either party, that neither he nor any company in which he is involved as either a sole proprietor, partner, shareholder, owner, officer, director or agent shall, solicit, from the manufacturers listed in Exhibit A, representation rights for products represented by TKO.
D) In the event any provisions or portions of paragraph five (5) are found to be invalid or unenforceable, the remainder of paragraph five (5) shall nevertheless remain in full force and effect.
The 1994 agency agreement also expanded Gentle’s geographic territory.

 Reilly signed one agency agreement with TKO, effective January 1, 1993. The agreement contained the following non-compete and non-solicit clauses:
5) COVENANTS NOT TO COMPETE, TRADE SECRETS AND LIMITATIONS. . .
B) AGENT agrees for a period of six (6) months following termination of this AGREEMENT, for any reason whatsoever, that neither he nor any company in which he is involved as either a sole proprietor, partner, shareholder, owner, officer, director or agent shall, without prior written approval from TKO:
1) Engage in the distribution, manufacture or sale of medical equipment, in the area describes [sic] in Exhibit B.
2) Disclose to any person, company or entity the names of and/or information relative to all customers of any manufacturer, acquired by AGENT or TKO, as a result of AGENTs performance of his duties under this AGREEMENT.
3) Disclose to any person, company or entity, the names of any, or any information about the products sold or supplies of products sold including but not limiting [sic] to prices charged or quoted, by AGENT and/or TKO.
4) Solicit, from the manufacturers, representation rights for products represented by TKO.
C) In the event any provisions or portions of this agreement paragraph five (5) are found to be invalid or unenforceable, the remainder of paragraph five (5) shall nevertheless remain in full force and effect.

 Both agreements contained a choice of law provision agreeing that Connecticut law would govern in any dispute between the parties. Specifically, the agreement provided:
11) APPLICABLE LAW
This AGREEMENT has been made in good faith and it shall be governed by the laws of the State of Connecticut. If any portion of this AGREEMENT itself is contrary to the law, the remaining provisions shall remain in effect.
Additionally, both agreements contained the following paragraph:
8) COMPLETE AGREEMENT AND TRANSFERABILITY
A) This AGREEMENT constitutes the entire contract between the AGENT and TKO. No modifications of it shall be binding on either party unless made in writing and signed by both parties. This AGREEMENT supersedes and cancels any and all previous contracts, arrangements or understandings that may have existed or may exist between the parties. There are no understandings, representations or warranties of any kind expressed or implied that are not expressly set forth herein . . .

 Specifically, the letter from Tomassetti to Reilly stated “This letter acknowledges our conversation on Monday January 3, 1994 and your decision not to renew your agreement with TKO, Inc. I understand your decision to purchase Jerry Beloris’ Manufacturing Representative Business. However you must comply with the terms of your Agency Agreement. I refer to Paragraph 5 particularly but not exclusively. Please forward to me as soon as possible, the territory you will be covering and the manufacturers you will be representing. As stipulated in Item 5B of your agreement, prior written approval from TKO must be obtained." (Emphasis added.)

 Gentle’s agency agreements in 1993 and 1994 contained the following provision:
2. OBLIGATIONS OF AGENT
A) AGENT agrees he. .. shall not be employed or otherwise professionally engaged, during the time of this AGREEMENT in any other pursuit or occupation. Without limiting the foregoing, AGENT specifically agrees he shall not, whether as an employee, agent, representative, principal, partner, proprietor or otherwise, engage in sales efforts similar to, or competitive with, those carried out on behalf of TKO hereunder.
TKO asserts, and the facts support, that Gentle breached this provision by working for Eastern Medical.

 In a letter to Reilly asserting Gentle’s breach of the agency agreement, Tomassetti stated that “Mr. Gentle has been representing Eastern Medical, selling competing products at the same time that he has been representing TKO, Inc. As you are very much aware, this is a direct violation of Mr. Gentle’s agency agreement." TKO asserts that, atthelatest, theAugust 18, 1994 letter to Reilly put Reilly on notice that Gentle was violating his own agency agreement. TKO further argues that Reilly’s continued employment of Gentle serves as the basis for the tortious interference with contractual relationship (Count IV) and the violation of G.L.c. 93A, §11 (Count VI) claims asserted against Reilly.

 Although I have concluded that Connecticut law applies in the present case, I note that I would reach the same result under Massachusetts law.

 Moreover, the agency agreement itself requires that any modification of it be in writing and signed by both parties. Thus, even if Reilly’s interpretation of the letter was-correct, it could not constitute a modification.

 Furthermore, the January 5, 1994 letter to Reilly reiterates TKO’s position with respect to the non-compete and non-solicitation restrictions. Reilly cannot reasonably claim that he thought TKO would not enforce the terms of the agreement based upon the explicit language in the letter heeding caution.

 Reilly also argues that TKO’s motion for summary judgment must be denied because TKO failed to mitigate damages. Assuming, without deciding, that this argument has some merit, it is not an element weighing against allowing summary judgment. Rather, it is an issue with respect to the amount of damages to which TKO is entitled that still must be assessed by a finder of fact.
Although TKO anticipates it, Reilly does not raise the issue of duress. Therefore, I do not address it. However, given the fact that Reilly held the agreement for a period of one to six months before signing it, and that Reilly had the assistance of counsel during that time period, I note that it would be difficult for Reilly to maintain that he was under such pressure as to have been deprived of his free will or free agency in signing the agreement. See Mills v. Swords Lumber Co., 63 Conn. 103, 105 (1893). See also Zebedeo v. Martin E. Segal Co., Inc., 582 F.Sup. 1394, 1417 (D. Conn. 1984) (holding that alleged wrongful conduct “must induce a fearful state of mind" in the person signing “which makes it ‘impossible for him to exercise his own free will’ ”).