[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION
CT Page 10366
This is a "trade secrets" matter. The plaintiff, Dunsmore 
Associates, Ltd. ("Dunsmore"), is a Connecticut corporation engaged in the business of recruiting individuals seeking employment in the field of marketing research and placing them with employers for a fee paid to the plaintiff by the employer. The defendant, Dominick A. D'Alessio ("D'Alessio"), is a long-time associate of the plaintiff, employed by the plaintiff in recruiting and placing candidates with corporate clients.
The plaintiff has filed an application for temporary injunction, seeking an order from this court enjoining the defendant from using or disclosing any confidential information or trade secrets of the plaintiff; and enjoining the defendant from soliciting, calling upon, selling or offering to sell any services in the field of marketing research personnel to any customer, client or account of the plaintiff until further order of the court.
The said application was filed together with a proposed writ, summons and complaint on February 13, 1998. The writ, summons and complaint was filed on March 18, 1998. The complaint is in five counts, the first alleging misappropriation of trade secrets; the second alleging violation by the defendant of the Connecticut Unfair Trade Secrets Act ("CUTSA"); General Statutes §35-50. et seq. The third count alleges tortious interference with business relationships; the fourth count alleges violation by the defendant of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes §§ 42-11Oa et seq.; the fifth count seeks injunctive relief. On April 24, 1998, the defendant filed his answer and counterclaim. The counter claim is in two counts, the first alleging breach of contract by Dunsmore; the second alleging breach of implied Covenant of good faith and fair dealing by Dunsmore.
A hearing on the application for temporary injunction began on April 20, 1998 and concluded on May 1, 1998. Both parties appeared and were represented by counsel.
 II
The plaintiff is an executive recruiting firm specializing in the field of marketing and marketing research and placing CT Page 10367 candidates with corporate clients nationwide. Dunsmore was founded in August, 1981, by its president, Joseph Dunsmore. The defendant went to work for the plaintiff in September, 1981 and continued employment with the plaintiff until January, 1998, when he was terminated. No formal contract of employment was entered into by the parties and defendant was not paid a salary. He operated as an independent contractor during his years of association with Dunsmore. Starting on a commission basis, the defendant from 1983 on, was paid 21% of the gross revenue of the company on an annual basis, until his termination in 1998. In recent years, the defendant received an annual bonus in addition to the gross revenue percentage.
The defendant received initial training in the fields of market research and executive recruitment from the plaintiff's principal, Joseph Dunsmore. Over time, the defendant developed his own network of corporate contacts and individual candidates whom he sought to place. At all times he worked on behalf of the plaintiff and identified himself as working on behalf of the plaintiff. The defendant often referred to himself as a vice president of the plaintiff. The defendant operated more or less autonomously within the plaintiff's operation. He and Joseph Dunsmore kept in touch and exchanged information regarding business by means of daily lunches. Initially, the firm employed Jospeh Dunsmore, his wife and the defendant. Over time it grew to include two secretaries, and one or two more executive recruiters, including, for the fifteen years prior to the defendant's termination, John F. Hoover.
At some time prior to January, 1998, the defendant decided to leave Dunsmore and open his own executive recruitment firm, specializing in the field of market research. He leased office space in Essex, Connecticut, consulted an attorney and an accountant as to various aspects of opening such a business, and arranged for installation of a telephone in the leased premises. He made photocopies of Dunsmore documents and removed them and numerous other documents from the Dunsmore office. Meanwhile, Joseph Dunsmore had become suspicious of the defendant's intentions. Dunsmore noted extensive photocopying by the defendant. Joseph Dunsmore discovered a list, in defendant's handwriting, of some 66 prime candidates from plaintiff's pool of candidates. On January 22, 1998 a confrontation ensued at the plaintiff's offices between Joseph Dunsmore and the defendant. The defendant was terminated and ordered off the premises. The defendant began work at the Essex office the following day. A few CT Page 10368 days later John Hoover resigned from plaintiff and joined defendant's firm, as did a Ms. Polizzi, formerly employed by the plaintiff.
 III
The plaintiff alleges that the defendant violated CUTSA by misappropriating and using a trade secret of the plaintiff, namely, a customer list.
The "customer list", as the term is used by the plaintiff, includes the following: candidate files; candidate jackets; alpha lists; corporate listings and the corporate files. The court accepts the plaintiff's definition. On making contact with a potential candidate, a candidate file was opened in that person's name. Initially, the file consisted of a "candidate jacket", an envelope on which typically was recorded a candidate's name, address, telephone numbers, current employment, and other information acquired at the opening contact. Over time, items relating to the candidate were placed within the jacket, including resumes, contact sheets, notes, candidate preferences, work history, compensation.
An alpha list is a computer printout, generated twice a month by plaintiff, listing all candidates and their file information in summary form. Currently the list contains some 5,000 names.
Corporate listings consist of one or more sheets of paper with information relating to a given corporate client, including a list of all people currently employed by the corporation, for whom plaintiff maintains files, and names of persons formerly employed by that corporation and their current employers. Additionally, the plaintiff maintained corporate files or folders, containing information gathered over time regarding the corporation, which could include annual reports, company philosophy, clippings from business magazines, job specifications, candidates sent by plaintiff for consideration by the corporation, and the like. It is the plaintiff's contention that the information contained in these documents constitutes a customer list, which list is a trade secret as defined by statute and case law.
It is undisputed that the defendant removed a number of such documents from the premises of the plaintiff on or before January 22, 1998, without notice to the plaintiff and with the intent of CT Page 10369 utilizing the information contained therein to assist in establishing his own firm in competition with the plaintiff.
The parties agree that on March 23, 1998, the defendant, through his lawyer, turned over to the plaintiff some 39 candidate files; 125 candidate resumes; 3 alpha lists, and 125 copies of candidate jackets which he had removed from the plaintiff's premises at or before the time of his termination. Joseph Dunsmore testified that some 102 candidate files remain missing from the plaintiff's office, as well as a number of corporate folders. The defendant testified he had returned all plaintiff's documents he'd had in his possession.
 IV
"Trade secret" is defined by statute (General Statutes, §35-51(d) as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
"Misappropriation" means: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . .; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew, or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." General Statutes § 35-51 (b).
"Improper means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means, including searching CT Page 10370 through trash", (§ 35-51 (a)).
In the context of the facts of this case, then, the plaintiff claims that the defendant D'Alessio has used a trade secret of the plaintiff without plaintiff's express or implied consent when at the time of use the defendant knew that this knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.
 V
A list of customers may be a trade secret, Town CountryHouse Homes Service, Inc. v. Evans, 150 Conn. 314, 318. Nevertheless, a substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means, Id. At 319. Factors to be considered in determining if information is a trade secret include (1) The extent the information is known outside the business; (2) the extent to: which it is known by employees or others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others, (Citation omitted), Robert S. Weiss Associates. Inc. v. Weiderlight, 208 Conn. 525, 538.
In reviewing these factors, courts also look to (1) the extent to which the employer-employee relationship was a confidential or fiduciary one; (2) the method by which the former employee acquired or compiled the alleged secret; (3) the former employee's personal relationship with the customers; and (4) the unfair advantage accruing to the former employee from the use of his former employer's alleged secret, Holiday Food Co. v. Munroe,37 Conn. Sup 546, 551.
Applying the factors outlined, supra, to the facts of the case at issue, the_ court finds:
1. The files, alpha lists, candidate jacket ;and corporate listings contained information not readily available to persons not employed by the plaintiff, such information including job-seeking history of candidates, client contacts with plaintiff, candidate qualifications, preferences, compensation history and CT Page 10371 requirements, personal characteristics and the like, information "secured by years of business effort" and "the expenditure of time and money" by plaintiff, Town Country Home Service. Inc.v. Evans, supra, at 319.
2. Such information was readily available to the defendant as an important and trusted member of the plaintiff "team", for use in furthering the interests of plaintiff.
3. Security measures, which included keeping files in a locked backroom and maintaining a password for access to candidate and client information stored in plaintiff's computers, while not elaborate, evidenced a goal of keeping candidate and client information confidential, not available to the public or competitors, and such measures constituted efforts reasonable under the circumstances to maintain security. As judge, later Justice, Shea, put it: In the practical operation of a business a customer list can hardly be surrounded with security precautions appropriate for crown jewels or military secrets, Holiday FoodCo. v. Monroe, supra, at 554, (Shea, concurring).
4. While the value of information contained in plaintiff's files and lists necessarily varied widely, depending on the history and frequency of contacts, the information recorded concerning a given candidate or corporate client, the overall value of the information contained in plaintiff's candidate and corporate files, corporate listings and alpha listings was very high for the plaintiff and for a competitor.
The court notes that while the defendant characterized the alpha list as being for the most part worthless, he acknowledged he concentrated his document removal efforts on those candidates he considered prime, those he rated as "5".
5. The amount of effort or money expended by the employer in compiling the information at issue was substantial, representing a significant component of plaintiff's business activities over sixteen or more year.
6. Such information could not be acquired or duplicated easily by others.
Although factors exist to assist the court, it need not accord them equal weight or consideration, Holiday Food Co. v.Monroe, supra, at 551. In applying the factors listed, supra, CT Page 10372 the court considered) 1) that the relationship between the plaintiff and its principal, Joseph Dunsmore, and the defendant was highly confidential and fiduciary, defendant's status as an independent contractor notwithstanding; (2) the method by which the defendant, acquired or compiled the customer list in question can only be characterized as surreptitious; (3) the defendant, it should be recognized, had developed a close relationship with many candidates and corporate clients in the course of his work for plaintiff; (4) the use by the defendant of the plaintiff's customer list would give the defendant a significant and unfair advantage over the plaintiff. To the extent the defendant removed and retained original documents (as contrasted to copies of documents), that unfair advantage is compounded; not only would the defendant acquire information improperly but would at the same time be depriving the plaintiff of said information.
 VI
Restraining the action of an individual or a corporation by injunction is an extraordinary power, always, to be exercised with caution . . ., Nicholson v. Connecticut Halfway House, Inc., 153 Connecticut 507, 511 (quotations marks, citations omitted). It is a harsh remedy and it is incumbent on the party seeking relief to allege facts showing irreparable damage and the lack of an adequate remedy at law, Stocker v. Waterbury, 154 Connecticut 446, 449. The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits, Olcott v.Pendleton, 128 Connecticut 292, 295. Granting temporary relief lies within the court's sound discretion, Covenant Radio Corp, v.Ten Eighty Corp. , 35 Conn. Sup. 1, 3-4. An applicant must show clearly that protectable interests are at stake, and establish, to a reasonable certainty, that it will prevail subsequent to a final hearing on its application for a permanent injunction, Id., at 3.
Applying these standards to the facts of the present case, the court finds that the plaintiff has met its burden of proof, and the court will grant the plaintiff's application for temporary injunction.
 VII
Based on the testimony and evidence presented, the court concludes that the customer list at issue, consisting of files, CT Page 10373 lists and records of the plaintiff, constituted confidential information or a trade secret of the plaintiff; that the defendant, Dominick A. D'Alessio, acquired said customer list by improper means; that the defendant's use of said customer list would result in irreparable harm to the defendant and that the plaintiff lacks an adequate remedy at law. It is impossible to quantify the potential monetary loss to the plaintiff should defendant be allowed to use the said customer list. The court finds that the plaintiff has established, to a reasonable certainty, that it will prevail subsequent to a final hearing on its application for a permanent injunction.
Accordingly, the plaintiff's application for temporary injunction is granted.
The defendant, Dominick A. D'Alessio is hereby enjoined from; (1) using or 1, disclosing any confidential information or trade secrets of the plaintiff. (2) contacting, soliciting, seeking to place or placing in employment, any individual listed on the plaintiff's most recent alpha listing, as of January, 1998, until further order of the court. The defendant is ordered to deposit, in a segregated account, any and all monies derived from employment placement by defendant of any individuals listed on the plaintiff's alpha listing as of January, 1998, during the period January 1998 to the date of this order and to hold such monies in said account until further order of the court. The defendant is not enjoined from contacting corporate clients of plaintiff in an effort to place individuals not listed on the said alpha list.
By the Court Downey, J.