[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in this action is an insurance agency located in Milford, Connecticut. The defendant Michael Gagnon is an insurance agent who was employed by the plaintiff for a period of several years which employment terminated with the defendants resignation on or about June 21, 1999. The co-defendant is the Founders Insurance Group, Gagnon's employer subsequent to his resignation. It is the plaintiff's claim that when the defendant Gagnon left the plaintiff's employment he thereafter utilized a list of customers of the plaintiff which list the plaintiff contends falls within the ambit of "Trade Secrets" as defined by Section 35-50 C.G.S. Such use prohibited under the statute caused the plaintiff damage and in the second count of the two-count complaint it is claimed that Gagnon violated an employee's duty of loyalty to his employer.
The plaintiff claims a temporary and permanent injunction prohibiting the defendants utilization of the so-called book of clients and continuing breach of his loyalty obligations as well as punitive damages and counsel fees.
The defendant prior to coming into employment with the plaintiff insurance agency in 1991 in the capacity of an agent had many years of experience with insurance agencies located in Hartford, Connecticut and elsewhere and had developed an area of specialization which involved soliciting clients with a common area of activity., i.e. fuel oil dealers, trash haulers, etc., according to his testimony. He became dissatisfied with his situation in Hartford and looked for employment elsewhere and happened to contact George Smith of the plaintiff agency in Milford. His role with the Smith Agency drew upon his knowledge CT Page 5460 of clients at his former place of employment as well as developing new clients with leads being produced by telemarketers at the plaintiffs agency and analysis of insurors records.
The defendant Gagnon testified that his employment with the plaintiff from 1991 proceeded uneventfully except that over time he became concerned that despite his many requests and contrary to George Smith's promises he never received an employment contract or did he become an "official" officer of the corporation, although he was given an official title, presumably to enhance his image with the clients of the firm.
In May of 1999, albeit unhappy, he anticipated remaining with the plaintiff agency but an incident occurred regarding a fellow employee who was apparently summarily dismissed by the plaintiff and, according to Gagnon, treated very unfairly. This precipitated his departure and relocation with the Founders Insurance Group with the defendant continuing in his area of specialization; that of developing clients with an identity of commercial activity. It is the plaintiff's claim that Gagnon took with him a mental list of Smith's clients if not a physical tabulation of such clients of Smith that were developed during Gagnon's term of employment.
It is important to note that at no time prior to or during his employment with the plaintiff that he, Gagnon, ever had a written contract of employment or ever executed a non-compete agreement as a condition of his employment. The testimony was that no one ever signed such an agreement nor was it requested.
The claim in the first count of the plaintiff's complaint relates to the utilization of information relating to customer listings by the defendant which information the plaintiff claims was gained by the defendant during the course of his employment by the plaintiff. This the plaintiff claims is a violation of protection afforded to the plaintiff under the "Trade Secrets" legislation — Uniform Trade Secrets Act. Chapter 625 C.G.S.
Section 35-51 defines, inter alia, "Trade Secret" as information . . . including a customer list that:
 (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or CT Page 5461 use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
The plaintiff directs the court's attention to the following:
"A list of customers may be a trade secret", Town and CountryHouse and Homes Service, Inc. v. Evans, 150 Conn. 314, 318,189 A.2d 390, [189 A.2d 390], (1963). Nevertheless, a substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means," id., 319 189 A.2d 390, [189 A.2d 390]. "Factors to be considered in determining if information is a trade secret include (1) the extent the information is known outside the business; (2) the extent to which it is known by employees or other involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could properly be acquired or duplicated by others, (citation omitted)". Robert S. Weiss and Associates, Inc. v.Weiderlight, 208 Conn. 525, 538, 546 A.2d 216 (1988).
The evidence offered by the parties during the course of the trial suggests that the methods employed by the plaintiff to develop a "customer list" were by no means unique. In fact, Gagnon employed the same techniques prior to his employment by the plaintiff and according to other witnesses the lists were made up by inquiries to insurance carriers, present clients, association news letters and telephone listings in the Yellow Pages. The court concludes that there was nothing esoteric about any customer list maintained by the plaintiff and that Gagnon apparently simply continued some of his marketing practices which had been successful for him at prior places of employment as well as drawing on his own contacts prior to Smith's employment. Several witnesses testified that no copies of lists were taken by Gagnon when he terminated his employment with the plaintiff and any reconstruction which took place after his termination was done from his prior experience while at plaintiff's agency and prior places of employment.
Another requirement to establish that a customer list is a trade secret is the effort on the part of the proponent to ensure that the list or compilation is protected from disclosure. The evidence offered indicated that the plaintiff took no steps to CT Page 5462 advise employees of the requirement of confidentiality and there were no agreements executed by employees with regard to protecting such claimed "Trade Secrets"; the lists were readily available without restriction, and one of the witnesses who had occasion to use the lists never heard of any "locked bin" as testified to by one of the witnesses for the plaintiff. Anthony Neuman who spoke with the defendant Gagnon about possible employment while Gagnon was still with the plaintiff said Gagnon never volunteered any information about Smith's customers. Kenneth Dressel who became Gagnon's employer upon Gagnon leaving Smith was emphatic in his testimony that Gagnon came into his employ with no physical list from his prior employer and that Gagnon drew upon his own memory of potential clients from all of his prior insurance business experience. According to Gail Wardel who later also became an employee of the defendant Founders Insurance Group testified there as no attempt on the part of the Smith Agency to keep any lists confidential and when she later worked with Gagnon to compile a list of customers it was done with nothing from Smith Agency but from memory, phone books and insurance company records.
The court concludes that the plaintiff has failed to sustain the burden of proof required to demonstrate that the defendant Gagnon appropriated from Danforth Associates any information that could be construed to be a trade secret according to the elements set out in "The Weiss Case", cited supra at p. 525.
The Second Count in the plaintiff's complaint alleges that the defendant Gagnon breached a duty of loyalty owed to the plaintiff by virtue of his employment relationship while at the Smith Agency. None of the evidence offered to the court suggests that there was anything more to this relationship than an employer-employee status. Gagnon claimed that he entered Smith's employ on a promise that he would receive a straight salary, that he would become an officer of the company as set out in the bylaws (Def. Exh. 20) and that he would receive a contract of employment but despite his repeated requests none of this occurred. To the extent that the plaintiff claims a duty of loyalty arise from a misappropriation of customer lists, the court has already concluded that none were misappropriated. From the evidence offered, the court cannot conclude that there was any fiduciary obligation owed from Gagnon to Smith which would give rise to a claim of disloyalty on the part of Gagnon.
Judgment may enter for the defendant on the complaint. CT Page 5463
___________________ George W. Ripley II Judge Trial Referee