[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was before the court on a motion for temporary injunction addressed to each defendant. Counsel stipulated they would like to present the matter based on the documents and affidavits attached to their briefs for a ruling on the legal enforceability of the noncompete agreements at issue here.
Plaintiff was the employer of each of the defendants, Amy Fresa and Travis Simms, under the following circumstances.
Fresa first came to the plaintiff as a temporary worker through Reitman Personnel on May 15, 2000. She was working as an Administrative Assistant. On May 30, 2000 plaintiff handed her an Employee Confidentiality and Noncompetition Agreement to sign. It stated she was a sales person. She returned it to plaintiff signed the following day, May 31, 2000.
On August 14, 2000 plaintiff hired Fresa as their employee. She was never a salesperson there. She worked there until April 4, 2002, at which time her employment terminated. Plaintiff and Fresa entered into a General Release and Settlement Agreement that date.
Fresa commenced work with OG Industries in August, 2002. OG is a competitor of plaintiff. Plaintiff seeks to enforce its Noncompete Agreement against Fresa. Fresa claims it is unenforceable because 1) it is not supported by any consideration, 2) its terms are overly broad and oppressive, and 3) the General Release and Settlement Agreement served to extinguish any rights that might exist under it.
Travis Simms first came into the employ of plaintiff previous to March 29, 2000; however how much previously has not been presented to the court as a stipulation. He signed the Employee Confidentiality and Noncompetition Agreement on March 29, 2000. His employment with the plaintiff terminated on January 22, 2001. He became employed with CT Page 16606 OG sometime thereafter. Plaintiff seeks to enforce its Noncompete Agreement against Simms. Simms claims it is unenforceable against him because 1) it lacked consideration and 2) its terms are unreasonable.
I. Fresa.
In the instance of Fresa, the court need not examine the circumstances of the Noncompete Agreement for the General Release signed by the plaintiff and defendant and Fresa operates to extinguish any obligations she may have had under the Noncompete Agreement.
The General Release, drafted by the plaintiff and on the plaintiff's stationary provides in salient part:
". . . in consideration of the mutual promises contained herein, the Employee and the Employer agree to the following terms in full and finalsettlement of all matters, specifically including, but not limited to, those matters relating to or arising out of the Employee's employment by the employer. . . .";
"1. This General Release and Settlement agreement constitutes thecomplete undertaking between the parties. No other promises or agreementsshall be binding or of any effect unless signed by those parties." (Emphasis added).
By its very language the general release covers all aspects of the parties' employment relationship, which includes the Noncompete Agreement. Further, even if there was some ambiguity in the language of the Release Agreement, it must be construed against the plaintiff, the obvious drafter of the Agreement. Plaintiff can not be permitted to seize on some perceived ambiguity in its own drafting to then enforce the Noncompete Agreement to its own benefit.
As to Fresa, the court finds the Noncompete Agreement unenforceable.
II. Simms
Simms argues that there was no consideration for his signing the noncompete and, therefore, it is unenforceable. It is essential, in order for the court to rule on this point, to know the date of his hire and the relationship between that and the signing of the Agreement. Accordingly, the court declines to rule on this claim.
Simms also argues that the Noncompete Agreement is unreasonable and, therefore, unenforceable. CT Page 16607
"The five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are (1) the length of time the restriction operates; (2) the geographic area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." Robert S. Weiss Assoc. v. Wiederlight, 208 Conn. 525,529 (1988).
The length of time for the operation of the Noncompete Agreement is two years. That is for a period of two years after the termination of Simms' employment with the plaintiff, he agreed not to be employed in, or engage in. business in competition with any product sold by, or any business or activity engaged in by, [plaintiff]. "No geographic limitation is placed on this covenant."
For a geographic distance of "three hundred (300) miles of any office or facility of [plaintiff]," Simms further agreed not to solicit or seek customers or identified potential customers of the plaintiff.
There is, effectively, no geographic limitation in the Agreement on the prohibition on Simms competing with the plaintiff. Essentially, then, it means he cannot compete anywhere in the world against the plaintiff for a period of two years from termination.
The 300 mile geographic limitation is a nonsolicitation clause which is distinct and different from the noncompetition clause in the agreement.
A worldwide prohibition on competition is patently and grossly unreasonable. The plaintiff, Connecticut Stone Supplies, Inc. has offered nothing to suggest that it is a worldwide competitive business in its field. Arguably, from plaintiff's brief it could be discerned that it does business all over the State of Connecticut, though that is not in evidence. Accepting that (for purposes of the matter before the court, construing the assertion in the brief as fact), a worldwide prohibition against competition is unreasonable and oppressive. It is overly broad and not necessary for the protection of the plaintiff.
Accordingly, the court finds the Noncompetitive Agreements signed by Fresa and Simms unenforceable. With this finding, plaintiff cannot succeed on the merits of its complaint.
Judgment on the Application for Temporary Injunction shall enter for the defendants, without costs. CT Page 16608
Lynda B. Munro Judge of the Superior Court CT Page 16609