[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff Lorenzo Lilly has brought this lawsuit against the Defendants Michael Santilli and the City of Hartford. The lawsuit was initially instituted by Complaint dated December 13, 1993, and was followed by Substituted Complaint dated October 18, 1994. The present operative complaint (hereinafter referred to as the "complaint") is the Second Revised Complaint dated December 27, 1994.
The complaint is in two counts. The First Count is directed solely at the Defendant Santilli, and alleges intentional infliction of emotional distress.[1] The Second Count is directed solely at the Defendant City, and alleges a violation by the City of 42 U.S.C. § 1983, inter alia, in failing adequately to discipline, train or otherwise direct its employees CT Page 13960 concerning the rights of minority employees.
The Plaintiff Lilly is an African-American. Both he and the Defendant Santilli were and remain employed by the City. At the time relevant to this lawsuit, both were employed by the City's Department of Public Works (the "Department") at the Department's garage at 40 Jennings Road, Hartford. Lilly was acting as a machine shop mechanic #1, while Santilli was engaged in the supply room located in the garage at some distance from the Plaintiff's station.
The lawsuit was tried to the court over a three-day period, October 27-28 and November 4, 1998. It was understood that the testimony and other admissible evidence proffered by any party on any count was, to the extent relevant, applicable to the entire case. Such testimony and evidence, particularly on the First Count, was sparse.
The Plaintiff Lilly presented only one witness, namely himself. His testimony occurred on the first trial day. Upon the completion of his testimony, he rested. The Defendant Santilli presented only one witness, namely himself His testimony occurred on the second trial day. Upon the completion of his testimony, he rested. The Defendant City submitted several material documentary exhibits, but only one witness, namely Thomas E. Johnson, a former Department official. This occurred on the third trial day. Upon completion of his testimony, the City rested. No rebuttal testimony was offered. A staggered briefing schedule was then set, Plaintiff, then Defendants, then Plaintiff rebuttal, the last brief being due November 16, 1998.
Thomas E. Johnson was a crucial witness. In January, 1990, Johnson became Assistant Director of Administrative Services in the City Department of Public Works. In September, 1990, his duties changed, the primary change being his hearing of second step grievances in the City grievance process. In this role, he dealt with employee complaints, including complaints from employees at the Jennings Road garage. He was subsequently promoted to Acting Director of the Department, and in June, 1993 was appointed Director of the Department. He held that position until he left City service in January, 1997. He has since relocated out of state.
Johnson was the only independent witness. There was nothing to indicate that he had any personal interest in the outcome of CT Page 13961 this case. His testimony, therefore, was determinative of various testimony differences among the parties on material matters, particularly with respect to the First Count.
 I. Background
The Plaintiff became an employee of the Department in 1960. In 1974 he was transferred to the Jennings Road garage. Virtually from that point on, fellow employees referred to him as "football head" or "football head Lilly". The Plaintiff made known his displeasure at this epithet.
The Defendant Santilli has been employed by the Department for over 15 years. He was transferred to the supplies section at the Jennings Road garage in 1988 or 1989, and subsequently became in charge thereof.
The complaint alleges that on November 6, 1992, and at various times thereafter, the Plaintiff was harassed and intimidated by Santilli; that said harassment and intimidation were motivated, at least in part, by race; and that said harassment and intimidation consisted of Santilli continuously referring to the Plaintiff as "football head," and leaving footballs inscribed "football head Lilly" on a supply counter and tool box used by the Plaintiff. Second Revised Complaint, First Count, Paragraphs 3-5.
The initial November 6, 1992 incident, according to Plaintiff's trial testimony, involved a football resting on a cup on the counter of the supply room, with the word "Lilly" written on the cup. When the Plaintiff, who had gone there for supplies, asked Santilli to remove these items, Santilli refused and made derogatory comments to him. The Plaintiff further testified that although Santilli was subsequently disciplined for this incident, he continued to harass the Plaintiff with the "football head" and other racially motivated epithets. Santilli denied that he had been engaged in such conduct.
 II. First Count (Santilli)
The First Count alleges liability for intentional infliction of emotional distress. In order to prevail on this cause of action, a plaintiff must establish four elements. These are "(1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a CT Page 13962 likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. New Haven,220 Conn. 225, 266-267 (1991). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort . . ." Id., quotingHustler Magazine v. Falwell, 485 U.S. 46, 53, 108 S.Ct. 876,99 L.Ed.2d 41 (1988). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 19 (1991).
The Plaintiff has not sustained his burden of proof on these issues. The Court accepts Plaintiff's testimony that the Defendant Santilli was one of numerous fellow employees who at various times referred to the Plaintiff as "football head". To the extent that Santilli, over the Plaintiff's objections, continued to confront the plaintiff with this epithet, elements numbers one and three are satisfied. The Defendant intended and did cause distress.
The evidence, however, does not establish elements two and four. Santilli's conduct, although annoying and not to be condoned, has not been proved to have risen to the level of being "outrageous". Were his conduct racially motivated, it would qualify as being outrageous. See e.g., Contreras v. CrownZellerbach Corp. , 88 Wash.2d 735, 565 P.2d 1173 (1977). While some co-employees may have used racial epithets, the Plaintiff has not proved that Santilli was one of them. Racial motivation also is contraindicated by the fact that at least one of the garage employees who participated in calling the Plaintiff "football head" was himself an African-American, as is Thomas Johnson.
In addition, the Plaintiff has not proved that his distress was severe. Although he testified that he suffered from high blood pressure, he had this condition for many years unrelated to this case. He produced no medical evidence in support of his distress claim. In Reed v. Signode Corp. , 652 F. Sup. 129
(D. Conn. 1986), the District Court, in granting a motion for summary CT Page 13963 judgment dismissing the plaintiff's intentional infliction of emotional distress claim, in part on the issue of severity, noted that it was significant that the "[p]laintiff was neither treated nor did he seek medical assistance for the distress he allegedly suffered." Id., 137. Similar significance applies here.
Moreover, there is an independent ground for finding that the Plaintiff has not satisfied his burden of proof. A plaintiff is limited to the allegations of his complaint. Matthews v. F.M.C.Corporation, 190 Conn. 700, 705 (1983). The court may not look beyond the complaint for facts not alleged. Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 537
(1988);Cavallo v. Derby Savings Bank, 188 Conn. 281,285-86 (1982).
The complaint alleges that the offending conduct occurred on November 6, 1992 and thereafter. The initial complaint containing these allegations is dated December 13, 1993.[2] It is undisputed that Santilli was on disability leave from March 8, 1993 to the end of January, 1994. This leaves a very narrow relevant period of time applicable to this case. Even if events beyond December 13, 1993, may be considered, the period is not appreciably wider, as the plaintiff was transferred from the garage on July 29, 1995, and has since worked alone as a truck driver.
The problem is magnified by the fact that the Plaintiff was extremely hazy on dates and events. His testimony on the dates of alleged offending conduct crucial to his case was in significant part contradicted by Santilli and Johnson, particularly by Johnson. Contradictions included the following:
1. Johnson confirmed Santilli's testimony that the alleged November 6, 1992 football on the counter incident actually occurred approximately six months earlier, and that the Department's discipline of Santilli therefor with a five-day suspension occurred in July, 1992.
2. According to Johnson, the discipline was for lack of supervision — i.e., failure to have removed the football —, and had nothing to do with any of the alleged name calling.
3. Other than the football on the counter incident, Johnson neither received any complaints from the Plaintiff nor reports from others concerning any incidents between the Plaintiff and CT Page 13964 Santilli.
4. Johnson specifically contradicted the Plaintiff's testimony that Johnson had told him that as the then Acting Deputy Director of the Department, he could do nothing about the Plaintiff's alleged complaints. He testified that the claimed incident did not occur.
The Court is limited to the competent evidence presented at trial. Even if the alleged offending conduct or any part thereof in fact occurred, the Plaintiff has not proved that significant conduct occurred during the relevant period alleged in the complaint.
 III. Second Count (City)
The Second Count is directed solely at the Defendant City, and is based on an alleged violation by the City of 42 U.S.C. § 1983. The Plaintiff alleges that the City, "as a matter of policy and practice, has with deliberate indifference, failed" (1) to adequately discipline, train or otherwise direct its employees within the Department concerning the rights of minority employees (Paragraph 9); (2) to properly sanction or discipline such employees for violation of the constitutional rights of minority employees within the Department (Paragraph 10); and (3) to sanction or discipline Department employees who are aware of and subsequently conceal such violations (Paragraph 11). Paragraphs 1-8 of the First Count are incorporated as such in the Second Count as the predicate for these alleged failures.
City of Canton, Ohio v. Harris, 489 U.S. 378, 387,109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) held that inadequacy of police training may serve as a basis for § 1983 municipal liability only where failure to train amounts to deliberate indifference to rights of persons with whom police come into contact. The analogy with this case holds true.
The Court's foregoing ruling on the First Count is dispositive of the Second Count. Even if it were not, the Plaintiff has not satisfied his burden of proof. The evidence is all to the contrary. The City has not been indifferent as alleged. The City had in force a comprehensive affirmative action plan (Defendants Exhibit B), as well as significant programs concerning discrimination, harassment and the like (e.g., Plaintiff Exhibit 1; Defendants Exhibit A), some of which were CT Page 13965 attended by the Plaintiff and the Defendant Santilli, as well as a non-discrimination clause in its union contract (Defendants Exhibit C). Santilli was disciplined.
 IV. Conclusion
Judgment shall enter in favor of the Defendants. No costs shall be awarded to or assessed against any party.
David L. Fineberg Superior Court Judge